VAN LEAR v. EISELE.

(Circuit Court, E. D. Arkansas, W. D. December 29, 1903.)

1. PUBLIC LANDS—HOT SPRINGS RESERVATION—POWER TO REGULATE USE OF WATERS.

The United States, being the absolute owner of the Arkansas Hot Springs, has the same power that a private owner would have to exclude the public from the use of the waters, or to prescribe the terms and conditions on which they may be used; and regulations in regard to such use adopted or authorized by Congress cannot be interfered with by the courts on the ground that they are unreasonable and oppressive.

2. SAME—DELEGATION OF POWER BY CONGRESS.

Congress may lawfully delegate the power to make such regulations to the Secretary of the Interior, but any exercise of such power by him must rest upon some statute delegating it either expressly or by necessary implication.

3. SAME—REGULATIONS BY SECRETARY OF INTERIOR—VALIDITY.

By Act March 3, 1891, c. 533, 26 Stat. 843, relating to the Arkansas Hot Springs Reservation, which by section 3 vests in the Secretary of the Interior power to make regulations to prevent the waste of water by lessees, and, generally, power to "make all necessary rules and regulations as to said bath houses and the service therein as shall be deemed best for the public interest," it was designed to provide for supplementing the general legislation of Congress by such specific regulations as may be necessary to carry out the general purpose of the government to preserve the property, and at the same time to give the public the opportunity to use the waters under proper and reasonable restrictions; and regulations promulgated by the Secretary thereunder in the exercise of his judgment and discretion, if reasonably adapted to such purpose, cannot be interfered with by the courts. But such provision does not

confer authority to make rules 9 and 10, promulgated June 6, 1903, which provide that no bathhouse supplied with water from the springs shall permit any person to bathe therein "who is under medical treatment," unless such person is a patient of a physician duly registered at the office of the superintendent, and that the right of registry will only be accorded to such physicians as are approved by a board designated by the Secretary. The fact that they apply only to persons under medical treatment, while all others are permitted the use of the baths without regard to their physical condition, renders such regulations void, as unwarranted and unreasonable, and not within the power conferred; and their enforcement will be enjoined at suit of a duly licensed physician of the state, who, by reason of having been denied the privilege of registry, is seriously injured in his business because his patients, without regard to the ailments for which they are being treated, are precluded from the use of the baths, whether prescribed by him or not.

**4. SAME.**

Such regulations cannot be sustained as valid to the extent of prohibiting the use of the baths on the prescription of an unregistered physician, since they contain no such limitation, and the courts are without power to introduce it by construction.

In Equity. On motion for preliminary injunction.

R. G. Davies, for complainant.

W. G. Whipple, U. S. Atty., and Reid Gantt, for defendant.

TRIEBER, District Judge. This is an application for a temporary injunction, submitted to the court upon the bill, answer, demurrer, and affidavits. The material facts, as they appear from the pleadings and the affidavits, are as follows:

The complainant is a physician, duly licensed under the laws of the state of Arkansas to practice his profession, residing in the city of Hot Springs; and the defendant is the superintendent of the Hot Springs Reservation, under appointment of the Secretary of the Interior. The complainant has been residing there and practicing his profession, under license from the state of Arkansas, for a number of years, and still is authorized, under that license, to practice his profession. That, as such physician, he has been successful, and established quite a profitable business. That most of the business of the complainant, and in fact of all physicians practicing in the city of Hot Springs, comes from patients living abroad, but coming to Hot Springs for the purpose of getting the benefit of the hot waters, which are said to possess great medicinal and curative powers. That the principal object of patients coming there is for the purpose of using these waters, under prescription from their physicians. That the hot water, which belongs to the government, is piped from the springs and reservoirs erected by the government to the various bathing establishments, and visitors can only take these baths at these establishments. The owners of these bathhouses obtain the water by contract from the government. On the 5th day of October, 1903, the defendant, who is the superintendent of the reservation, directed the owners of all the bathhouses that they must not permit any person to take baths in their respective establishments who is under treatment of a physician, unless such physician is first registered at the office of the superintendent of the reservation as one qualified to prescribe the waters from the hot springs.

That, in order to obtain such registration, a physician must bring a certificate from a board of physicians at Hot Springs, which board is designated by the Secretary of the Interior, that he possesses proper professional qualifications and character; and that is in addition to the license and certificate granted to him under the laws of the state of Arkansas, authorizing him to practice his profession.

The complainant, having been refused such a certificate from the board of physicians, finds himself practically stopped in the practice of his profession, as all patients under his treatment are denied the use of any of the baths in the city of Hot Springs. The action of the superintendent is based upon certain rules and regulations promulgated by the Secretary of the Interior on the 6th day of June, 1903, which regulations are as follows:

"Rule 9. No bathhouse supplied with hot water from the Hot Springs Reservation shall permit any person to bathe therein who is under medical treatment, unless the applicant for baths presents satisfactory evidence that he or she is the patient of a physician duly registered at the office of the superintendent of the Hot Springs Reservation as one qualified to prescribe the waters from the hot springs.

"Rule 10. Physicians desiring to prescribe the waters of the hot springs, either internally or through the medium of the baths, must first be registered at the office of the superintendent of the reservation. Registration will only be accorded such physicians as are found, by a board of physicians designated by the Secretary of the Interior, to have proper professional qualifications and character."

The damages alleged by the complainant to have been sustained by him by reason of these acts of the superintendent exceed $2,000.

The question to be determined on this preliminary hearing is whether the action of the superintendent of the reservation is a violation of the rights of the defendant, as guarantied to him by the Constitution and laws of the United States.

The contention of counsel for complainant is that the Secretary of the Interior does not possess the power to make such rules, for several reasons: First, that the effect of this rule is to deprive complainant and other physicians, situated as he is (i. e., duly licensed to practice his profession under the laws of the state of Arkansas), of a valuable right, without due process of law; second, that, if Congress possesses such power, it cannot delegate it to the Secretary of the Interior, but must exercise it directly; third, that Congress did not grant to the Secretary the power claimed and exercised by the promulgation of the rules hereinbefore set out.

1. In the Hot Springs Cases, 92 U. S. 698, 23 L. Ed. 690, it was finally determined that the lands and springs thereon are the absolute property of the government. This being the case, there can be no question but that the government, acting through Congress, has the right to control them, or refuse the use of them to the public, or, if it permits such use, to prescribe the terms and conditions under which this privilege may be enjoyed. In Camfield v. United States, 167 U. S. 518, 524, 17 Sup. Ct. 864, 866, 42 L. Ed. 260, Mr. Justice Brown, in delivering the unanimous opinion of the court, says:

"While the lands in question are all within the state of Colorado, the government has, with respect to its own lands, the rights of an ordinary pro-

prietor to maintain its possession and to prosecute trespassers. It may deal with such lands precisely as a private individual may deal with his farming property. It may sell or withhold them from sale. It may grant them in aid of railways or other public enterprises. * * * The general government doubtless has a power over its own property analogous to the police power of the several states, and the extent to which it may go in the exercise of such power is measured by the exigencies of the particular case. If it be·found to be necessary, for the protection of the public or of intending settlers, to forbid all inclosures of public lands, the government may do so, though the alternate sections of private lands are thereby rendered less available for pasturage. The inconvenience, or even damage, to the individual proprietor, does not authorize·an act which is in its nature a purpresture of government lands. While we do not undertake to say that Congress has the unlimited power to legislate against nuisances within a state which it would have within a territory, we do not think the admission of a territory as a state deprives it of the power of legislating for the protection of the public lands, though it may thereby involve the exercise of what is ordinarily known as the 'police power,' so long as such power is directed solely to its own protection. A different rule would place the public domain of the United States completely at the mercy of state legislation."

The privilege granted to complainant by his license from the state of Arkansas merely authorizes him to practice his profession within its jurisdiction, but to hold that it is a license to him to make use of the waters on the reservation owned by the government would deprive the government of its rights as an ordinary proprietor, which, in the language of the Supreme Court above quoted, "it may deal with precisely as a private individual may deal with his farming property."

Will any one contend, in the ·face of that decision, that, if these lands and hot-water springs were owned by a private individual, the owner could not control them as he could his other private property; and, if so, would not the demand of complainant be an attempt on his part to deprive the owner of his property without compensation or due process of law?

Nor can courts interfere with the exercise of the powers granted to Congress by the national Constitution upon the ground that its acts are unreasonable and oppressive. In Veazie Bank v. Fenno, 8 Wall. 533, 548, 19 L. Ed. 482, this proposition was ably urged upon the court by such eminent counsel as Reverdy Johnson and Caleb Cushing; but the court, in reply thereto, said:

"The first answer to this is that the judicial cannot prescribe to the legislative departments of the government limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of the Legislature is not to the courts, but to the people by whom its members are elected. So, if a particular tax bears heavily upon a corporation or a class of corporations, it cannot, for that reason only, be pronounced contrary to the Constitution."

See, also, Spencer v. Merchant, 125 U. S. 355, 8 Sup. Ct. 921, 31 L. Ed. 763, where numerous cases on that point are collected.

2. That Congress can delegate the power to make rules and regulations concerning the public domain, or other matters, is now no longer an open question. The earliest decision on that point is United States v. Bailey, 9 Pet. 238, 9 L. Ed. 113, where it was held that the regulation · of the Secretary of the Treasury, under authority of an act of Congress, permitting proofs of claims against the government to be veri-

fied before any justice of the peace of any of the states, was a valid delegation of authority, and a person guilty of swearing falsely to such a claim before a justice of the peace of the state of Kentucky was held to be properly convicted of perjury in a court of the United States. This decision has been approved and followed by that court in United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591; Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; In re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813. In the Caha Case there was a conviction of perjury, under section 5392, Rev. St. [U. S. Comp. St 1901, p. 3653], in a contest in a local land office; the oath having been administered by one of the land officers before whom the contest had been carried on. The judgment of the court was attacked because there was no act of Congress providing for such a contest before those officers; but the court held, in view of the general grant of authority to the Secretary of the Interior to prescribe appropriate regulations for the disposition of the public lands, that a regulation made by that department, authorizing such contest before these local officers, made it a case in which the laws of the United States authorized an oath to be administered, and the conviction was sustained. In the Kollock Case the act of Congress authorized the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to prescribe rules and regulations for the packing of oleomargarine; and to sell or offer for sale that article packed in a manner different from that prescribed by the Commissioner of Internal Revenue was made a criminal offense. A conviction for a violation of the regulations thus made by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury was affirmed.

3. Did Congress grant the power to the Secretary of the Interior to make the regulations herein relied on by the defendants as a defense to this action? The contention of counsel for the defendant is not only that such power was granted, but also that regulations made by the head of a department have the same force and effect as law, even if not expressly authorized by Congress, if not in conflict with some statutory provision. This claim cannot be sustained. The power must be granted expressly or by necessary implication; otherwise it cannot be lawfully exercised. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; United States v. Eaton, 144 U. S. 677, 688, 12 Sup. Ct. 764, 767, 36 L. Ed. 591. In the latter case the court say:

"It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offense, and we do not think that the statutory authority in the present case is sufficient. If Congress intended to make it an offense for wholesale dealers in oleomargarine to omit to keep books and render returns as required by regulations to be made by the Commissioner of Internal Revenue, it would have done so distinctly, in connection with an enactment such as that above recited, made in section 41 of the act of October 1, 1890 [c. 1244, 26 Stat. 621]. Regulations prescribed by the President and by the heads of departments under authority granted by Congress may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense."

It is true, in the case at bar the rules do not make the acts of a physician not registered a criminal offense; still, so far as the complainant is concerned, the statute is highly penal, for it deprives him of a valuable right—the right to practice the profession, which, under the laws of the state where he seeks to exercise this right, he is permitted' to do. We must therefore look to the act of Congress to determine whether the power to make the regulations complained of in this action was granted to the Secretary of the Interior, for, in the absence of such authority, these rules which are set up as a defense to complainant's bill are absolutely void and of no effect. The act of Congress relied upon is section 3 of the act of March 3, 1891, c. 533, 26 Stat. 843, entitled "An act to regulate the granting of leases at Hot Springs, Arkansas, and for other purposes." The parts of the section which are claimed to vest the Secretary of the Interior with that power are as follows:

"Full power is also vested in him [Secretary of the Interior] to make all needful rules and regulations as to the use of the hot water and to prevent its waste, including full power to authorize the superintendent of the reservation to make examination and inspection at any time of the manner of using the hot water at any bath tub that it may be used in proper quantity only and to prevent waste."

This part of the section clearly limits the authority of the Secretary to such rules and regulations as are necessary to prevent the waste of the water, and therefore does not authorize the rules now in controversy. The other part of the section is more general. It provides:

"And also generally the Secretary of the Interior may make all necessary rules and regulations as to said bath houses and the service therein as shall be deemed best for the public interest and to provide penalties for the violation of any regulation, which may be enforced as though provided by act of Congress."

The object of this general authority to the head of that department of the government under whose immediate supervision the public lands are placed is obvious. The government is the owner and in possession of lands containing springs of great curative powers. By the provisions of the act of Congress of April 20, 1832, c. 71, 4 Stat. 505, these springs, together with four sections of land, including the springs as near the center thereof as may be, were reserved from being entered, located, or appropriated for any purpose whatever. The same reservation from disposal of the lands containing these springs is found in the act of March 3, 1877, c. 108, 19 Stat. 377, enacted by the first Congress which met after the final determination by the Supreme Court that' the government is the absolute owner of them. At every session of Congress since then, acts appropriating large sums of money for the maintenance, improvement, and beautifying of the grounds, as well as regulating the use of them, have been passed; showing clearly the intention of Congress to hold these lands as the property of the government absolutely. To provide all details necessary for the preservation of such property, and at the same time give the public an opportunity to make use of the healing waters, by which thousands are annually relieved from disease and suffering, would be impossible by general acts of Congress; and for this reason Congress, in its wisdom, desig-

nated the Secretary of the Interior as the agent of the government to have complete control of the reservation, and by rules and regulations to provide for everything necessary to carry out the philanthropic objects of the government in the same manner as if owned by a private individual or corporation. The power thus vested in the Secretary is as general as is possible. His duty is not only to protect the government in its rights, but also all who, by permission of the government, may desire to use the waters with the hope of being benefited thereby. Cleanliness, protection from contagious disease, provisions against the use of the waters in a manner which may prove harmful, and many other matters too numerous to mention, require prudent regulations; and the Secretary of the Interior was designated for that purpose, in order that abuses could be corrected speedily, without awaiting the slow action of Congress. An officer, when thus intrusted with public duties, is not subject to the control of the courts in the exercise of his judgment and discretion, which the law reposes in him as a part of his official functions, unless such judgment or discretion is abused and exercised in a capricious manner, and provided, of course, that his acts are within the limits of the powers thus conferred upon him by statute, and not unreasonable.

The regulation complained of in the case at bar prohibits the use of the hot waters belonging to the government to any person under medical treatment, unless the physician, whose patient he is, is duly registered at the office of the superintendent of the Hot Springs Reservation as one qualified to prescribe the waters from the hot springs. Rule 10 provides:

"That registration will only be accorded to such physicians as are found by a board of physicians designated by the Secretary of the Interior to have proper professional qualifications and character."

To sustain these rules, it is claimed by learned counsel for the defendant that, as the baths, if not taken judiciously, under direction of competent physicians, are very dangerous, it is proper for the Secretary of the Interior to permit only such physicians to prescribe them as may, upon examination, be found to possess proper professional qualifications and character. If this is true, the court would not hesitate to sustain these rules as a reasonable exercise of the discretion vested by law in the Secretary, for the courts will always indulge in presumptions in favor of the validity of the acts of an officer vested by Congress with the power to determine certain matters, provided that such a rule is reasonable, and within the powers, either express or implied, granted to him. An examination of rule 9 will show that persons not under medical treatment of a physician are not excluded from the use of these waters, but the prohibition is confined only to such persons as are under medical treatment of a physician. Why is a person not under medical treatment of a physician in less danger from the use of these waters than one under treatment of a physician duly licensed as such under the laws of his state, but not registered on a certificate of a board appointed by the Secretary of the Interior? The court is unable to understand the cause of such a distinction. If persons not under medical treatment of a physician can safely take these baths as often

as, and in any manner, they desire, it is hardly reasonable to presume that, if he happens to be under medical treatment of a physician, the baths would become dangerous. But it is earnestly insisted that, if the Secretary has the power to prevent the use of the baths upon the prescription of an unauthorized physician, the rule should be sustained to that extent. The difficulty with this contention is that the Secretary did not see proper to so limit the rule, and courts are powerless to introduce words of limitation. The rule must stand as a whole, or fall altogether. In United States v. Reese, 92 U. S. 214, 23 L. Ed. 563, the same contention was made in behalf of an act of Congress; but the Supreme Court, in overruling it, said:

"We are therefore directly called upon to decide whether a penal statute, enacted by Congress with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose, we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is whether we can introduce words of limitation into a penal statute, so as to make it specific, when, as expressed, it is general only. It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. * * * To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

The same question was also before the court in the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, and the court there said:

"It has been suggested that, if Congress has power to regulate trade-marks used in commerce with foreign nations and among the several states, these statutes shall be held valid in that class of cases, if no further. * * * While it may be true that when one part of a statute is valid and constitutional, and another part is unconstitutional and void, the court may enforce the valid part, where they are distinctly separable, so that each can stand alone, it is not within the judicial province to give to the words used by Congress a narrower meaning than they are manifestly intended to bear, in order that crimes may be punished which are not described in language that brings them within the constitutional power of that body."

There is another ground upon which this rule must be held as being in excess of the powers granted to the Secretary. The rule does not limit the prohibition to use the baths to such persons as desire to take them upon prescription of an unregistered physician, but all persons who are patients of such a physician, although they may be treated for some disease which does not require the use of the baths at all, are included by the terms of this rule. A person may be under treatment of such a physician for a disease which can in no wise be affected by the use of the hot water; still, if he desires to make use of it of his own volition, he cannot, under this rule, do so, because he is under

treatment of an unregistered physician, while, if he was not under such treatment, he would be accorded the privilege of using them. The act of Congress does not undertake to vest the Secretary of the Interior with such power.

The rule as now enforced is unwarranted and unreasonable, and for this reason absolutely void and of no effect. Complainant is entitled to a temporary injunction.