## UNITED STATES v. BELRIDGE OIL CO.

(Circuit Court of Appeals, Ninth Circuit.
July 12, 1926.)

No. 4782.

1. Mines and minerals ⬡⟿5—In view of knowledge, acquiescence, and approval of the Navy Department and Congress, bona fide lease of land in naval petroleum reserve by Department of Interior held not subject to annulment because of any lack of power of President to make executive order (Act June 4, 1920 [41 Stat. 812]).

Notwithstanding any lack of power of President, in view of Act June 4, 1920, to make executive order transferring management of naval petroleum reserves from Naval Department to Department of the Interior, lease by the Secretary of the Interior of land therein for protection of such reserves was not on that account subject to annulment, there being no fraud or mala fides, and the Navy Department being advised of and in touch with and approving all that was done, and Congress being informed of the executive order and transfer of administration and acquiescing therein, and expressing no disapproval of such leases.

2. Mines and minerals ⬡⟿5—In view of existing public exigency from drilling on adjacent privately owned land, lease of land in naval petroleum reserve held not subject to attack for lack of advertising for proposals (Rev. St. § 3709 [Comp. St. § 6832]; Act Feb. 25, 1920, § 17 [Comp. St. Ann. Supp. 1923, 4640¼hh]).

A public exigency existing requiring immediate action in leasing land in naval petroleum reserve to prevent loss being caused by drilling on adjacent privately owned land, lease was not subject to attack, under Rev. St. § 3709 (Comp. St. § 6832), and Act Feb. 25, 1920, § 17 (Comp. St. Ann. Supp. 1923, § 4640¼hh), because of omission of advertising for proposals before executing it.

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Wm. B. Sheppard, Judge.

Suit by the United States against the Belridge Oil Company. From an adverse decree, the United States appeals. Affirmed.

Samuel W. McNabb, U. S. Atty., and John R. Layng, Asst. U. S. Atty., both of Los Angeles, Cal., and Nat M. Lacy, Sp. Asst. Atty. Gen., for the United States.

L. W. Andrews, A. V. Andrews, and Oscar Lawler, all of Los Angeles, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. In the court below the United States brought a suit to cancel a lease to lands in Naval Petroleum Reserve No. 1 in the state of California, executed on April 24, 1922, to the appellee, by the First Assistant Secretary of the Interior, at the direction of Albert B. Fall, the Secretary of the Interior, alleging in the complaint that by the Act of June 4, 1920 (41 Stat. 812), the Secretary of the Navy was directed to take possession of the lands within the Naval Petroleum Reserves, subject to the control of the United States, for naval purposes, to be conserved, developed, used, and operated by him directly, or by contract, lease, or otherwise; that the Secretary of the Interior induced the President to issue the executive order of May 31, 1921, transferring to him the powers conferred and the duty imposed by Congress upon the Secretary of the Navy; that the lease was for a period of 20 years of 142.16 acres in section 34, township 30 south, range 24 east of the Mt. Diablo meridian, with the preferential right of renewal for successive periods of 10 years; that the lease was made without advertisement thereof, and without competitive bidding, and without requesting proposals therefor; that the executive order of May 31, 1921, was contrary to the Act of June 4, 1920, and ineffective to confer power upon the Secretary of the Interior to execute the lease.

The bill further alleged the extraction of more than 1,000,000 barrels of oil from the leased premises upon a daily average production of 2,096 barrels, and alleged that the lessee was proposing to drill additional wells on the leased land, which, unless restrained by the court, would cause irreparable injury to the land and obstruct the declared policy of the United States to conserve the oil for the use of the Navy. The bill prayed for an injunction against further operations and trespass on the land, and for the annulment of the lease. The cause was heard on the pleadings, the stipulations and admissions of counsel, and the evidence, both oral and documentary, and thereupon the court held that the affirmative defenses set up in the answer were fully sustained by the evidence, and dismissed the bill of complaint.

The primary contention of the appellant is that the executive order of May 31, 1921, was void for want of power in the President to transfer to the Secretary of the Interior the powers and duties conferred by Congress upon the Secretary of the Navy, and it is asserted that Congress alone has power to legislate concerning the disposition of the public lands and to make needful rules and regulations respecting the territory or other property belonging to the United States, and that the power is exclusive, citing Utah Power &

Light Co. v. United States, 243 U. S. 389, 404, 37 S. Ct. 387, 61 L. Ed. 791; Hot Springs Cases, 92 U. S. 698, 23 L. Ed. 690; The Floyd Acceptances, 7 Wall. 666, 676, 19 L. Ed. 169; Van Lear v. Eisele (C. C.) 126 F. 823; and it is further asserted that Congress, having vested the power in the Secretary of the Navy to conserve, develop, use, and operate, directly or by contract, lease, or otherwise, unappropriated lands in the Naval Reserves, the President was without authority to confer such power upon the Secretary of the Interior, citing Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178, Pan-American Petroleum Co. v. United States, 9 F.(2d) 761, United States v. Pan-American Petroleum Co. (D. C.) 6 F.(2d) 43, and Lear v. United States (D. C.) 50 F. 65.

The appellee asserts the validity of the lease upon grounds wholly distinct from the question of the validity of the executive order, and rests its affirmative defense upon the following propositions: (1) That the lease was adopted, acquiesced in, and ratified by the Secretary of the Navy. (2) That it was acquiesced in and ratified by Congress.

To the proposition that, notwithstanding the alleged want of power to transfer the management of the oil reserves from the Naval Department to the Department of the Interior, Congress might ratify such transfer by acquiescence, the appellee relies upon Buford v. Houtz, 133 U. S. 320, 10 S. Ct. 305, 33 L. Ed. 618; Atchison v. Peterson, 20 Wall. 507, 22 L. Ed. 414; United States v. Midwest Oil Co., 236 U. S. 459, 35 S. Ct. 309, 59 L. Ed. 673, and upon the fact that Congress was fully informed of the manner in which the Naval Petroleum Reserve affairs were being administered under the executive order, and made appropriations for the purpose of carrying out such administration, as when in 1921 it appropriated $100,000, which was transferred on the books of the Treasury from the Naval Department to be used by the Bureau of Mines of the Interior Department, and made like appropriations in the two succeeding years to be used in covering the expense of maintaining a force for gauging and other field work for the Naval Department, a congressional committee having been informed of the arrangement between the two departments, whereby the Interior Department was performing administrative service for the Naval Department in connection with the Naval Reserve properties and leases. And it relies also upon the fact that copies of the lease here in question, and of other similar leases, were transmitted to Congress a few days after the execution thereof, and the fact that upon a congressional investigation of the entire subject of the leasing of lands within the Naval Reserve, at the conclusion of which proceedings were by the joint resolution of February 8, 1924, directed against certain named leases, no proceedings were directed against the lease here in question, or other similar leases executed for protective purposes, and it contends that Congress by implication approved the latter leases and found no ground for assailing them.

It was shown that the Secretary of the Navy, in consultation with Rear Admiral Robison, Chief of the Bureau of Engineering in the Navy Department, determined that protective strip leases of oil lands in the Naval Reserve should be made in all cases where drilling on adjacent privately owned lands threatened loss to the government lands, and that the particular lease here in question was discussed, together with the royalties thereon, which were reported to be as high as could be obtained; that Robison recommended that the Secretary of the Navy approve the lease; that the latter responded, "All right; tell them to go ahead;" that a copy of the lease was lodged with the Secretary of the Navy; that from time to time during a period of three years itemized reports of the drilling operations and the production of oil under the lease were sent from the Department of the Interior to the Secretary of the Navy; that the royalty value of the oil produced under the lease was regularly delivered to the naval account; that in 1924 the Secretary of the Navy wrote to the Secretary of the Interior, suggesting that in cases where it might be possible to arrange agreements with the owners of wells on adjoining tracts to restrict operations, and thus eliminate the necessity of drilling some of the defensive wells, it would meet the approval of the Naval Department, "as it desires to adhere to the policy of retaining oil in the ground wherever this may be done under adequate protection."

[1] There being no suggestion of fraud in connection with the execution of the lease, or of mala fides on the part of any of the parties thereto, we are not convinced that under the law here applicable the facts disclosed by the record are sufficient to show that the court below was in error in failing to decree the annulment of the lease on the ground of the lack of power of the President to make the executive order, or the authority of the officers of the Interior Department to negotiate and execute the contract, or that the

court below was in error in sustaining the affirmative defenses. The evidence all tended to show that, while the administration of the Naval Petroleum Reserve leases was conducted through the Department of the Interior, the Department of the Navy was advised of and was in touch with all that was done and approved the same, and that Congress was also informed of the executive order and the transfer of the administration of the oil lands from the Department of the Navy to that of the Interior, and acquiesced therein, and at no time expressed disapproval of those leases, which were made for the protection of the Naval Oil Reserves, and in fact we think those leases were permissible under the Act of June 4, 1920.

[2] The appellant contends that under the provisions of section 3709, Rev. Stats. (Comp. St. § 6832), and section 17 of the Act of February 25, 1920 (41 Stat. 443 [Comp. St. Ann. Supp. 1923, § 4640¼hh]), the only manner in which lands could be leased within "the known geologic structure of a producing oil or gas field and the unentered lands containing the same, not subject to preferential lease," was by advertising for proposals respecting the same. The first portion of section 3709 provides that all purchases and contracts for supplies in any of the departments of the government shall be made by advertising for proposals. That provision, of course, can have no application to the lease here in question. But the section further provides that, when immediate delivery or performance is required by the public exigency, the article or service required may be procured by open purchase or contract. The appellee contends that the public exigency existed in the present case, and demanded, as public service, the prompt execution of the lease to prevent the loss and waste of the oil then being caused by drilling on adjacent privately owned lands, and that section 17 of the Act of February 25, 1920, was a general provision, the terms of which were rendered inapplicable by the provisions of the Act of June 4, 1920, which was passed with special reference to the Naval Petroleum Reserve, and which directed the Secretary of the Navy to take possession of the lands thereof, and to conserve, develop, use, and operate the same in his discretion, directly or by contract, lease, or otherwise. Irrespective of the question of the effect of that act, we are of the opinion that a public exigency existed requiring immediate action in leasing the land here in question, and that the lease is not subject to attack on the ground of the omission of advertisement for proposals before executing the same.

The decree is affirmed.