Mr Justice Story
delivered the opinion of the Court.
This is a criminal case, certified from the circuit court of the district of Kentucky upon a division of opinion of the judges-of that court.
The defendant, John Bailey, was indicted for false swearing under the third section of the act of congress of the 1st day of March 1823, Gh. 165, which provides “ that if any person shall swear or affirm falsely touching the expenditure of public money, or in support of any claim against the United States, he or she shall, upon conviction thereof, suffer as for wilful and corrupt perjury.” The indictment charges the false swearing to be in an affidavit made by the defendant, before a justice of the peace of the commonwealth of Kentucky, in support of a claim against the United States, under the act of 'congress of the 5th day of July 1S32, ch. 173, to provide for liquidating and paying certain claims of the state of Virginia : and there are various counts in the indictment, stating the charge in different manners. It. appears from the record, that at the.trial “the attorney for the United States read in evidence the papers set out in the indictment, purporting to be the affidavit of the prisoner, with the certificates of the said Josiah Reed and Wil *252 liam Suddetb, aud gaveevidence to the jury, conducing to prove that the prisoner did, at the time and place charged in the indictment, take oath as charged, and subscribe the paper set out in t.he indF'ment as his affidavit, before the said-Reed; and that' the said Reed was then and there a justice of the peace of the commonwealth of Kentucky, in and for the said county of Rath, duly commissioned, qualified and acting as such ; and also gave evidence conducing to prove, that immediately after the passage of the said act of congress of the 5th day. of July 1832, entitled “an act for liquidating and paying certain claims of the staLe of Virginia,” the secretary of the treasury did establish, as a regulation for the government of the department and its officers, in their action upon the claims in said act mentioned, that affidavits made and subscribed before any justice of the peace, of any of the states of the United States, would be received and considered, to prove the persons making claims under said act, or the deceased whom they represented, were the persons entitled under the provisions thereof, and that the said regulations had been ever since acted under at the department, and numerous claims heaid, allowed and paid on such affidavits ; and also gave evidence conducing to prove that the prisoner, acting as the executor of his father, John Bailey^Jiad, before the time of making and subscribing said affidavit, asserted the claim therein mentioned, and employed Thomas Triplett to prosecute the same, and receive the money, thereon ; ’ that the said Triplett did afterwards present the said affidavit and certificates, in support of said claim at the said department, on vrhich, together with other affidavits, the same was allowed and the money paid, and a part thereof paid to the prisoner. The above being all the evidence conducing to prove the authority or jurisdiction of said Josiah Reed, to. administer said oath and take said affidavit, the counsel for the prisoner moved the court to instruct the jury, that the said Josiah Reed had no authority or jurisdiction to administer said oath or .take said affidavit; and that whatever other facts they might find on the evidence, the-prisoner could not have committed the crime of perjury, denounced by the thirteenth section of the act of congress, more effectually to provide for the punishment of certain claims against the United States and for other purposes, “ approved on the 3d of March 1825,” nor of false,-swearing de *253 nounced by the third section of the act “ in addition to the act” entitled “an act for the prompt settlement of public accounts, and for the punishment of the crime of perjury,” approved on the 1st of March 1823, and their verdict ought to be for the prisonerwhich motion the attorney for the-United States opposed.
On this question, the judges were, divided and opposed in opinion, whereupon, on the motion of the attorney of the United States, the said question and disagreement were stated, and ordered to be certified to the supreme court.
It is admitted that there is no statute of the United States which expressly authorizes any justice of the peace of a state, or indeed any officer of the national government, judicial or otherwise, to administer an oath in support of any claim against the United States under the act of 1832, ch. 173. And the question is, whether, under these circumstances, the oath actually.administered in this case was an oath upon which there would be a false swearing, within the true intent and meaning of the act of 1823, ch. 165.
It is unnecessary to consider in this case, whether • an' oath taken before a mere private or official person, not authorized to administer an oath generally, or in special cases, or riot specially authorized, recognised or allowed by the regulations or practice of the treasury department, as competent to administer an oath, in support of any claim against the- United States ; would, though the claim should be admitted or acted upon in the treasury department, under such a supposed sanction, be within the provision of-the act of 1823, ch. 165. These questions may .well be reserved for consideration until they shall arise directly in judgment. In the present case, the oath was administered by a state magistrate, having an admitted authority under the state laws to administer oaths, virtute officii, in many cases, if not in the present case; and it is further found in the case, that there was evidence at the trial conducing to prove, (and for the purposes of the present argument it must be taken as proved) that the secretary-of the treasury did establish a regulation, authorizing affidavits made before any justice of the peace, of a state, to be received and considered in proof of claims under the act of 1832 ; so that the solution of the question, now before us, depends upon this; whether the oath, so *254 administered under the sanction of the treasury department, is within the true-intent and meaning of the act of 1823.
Admitting, for the sake of argument, -that it is true (on which, however, we express no opinión) that a state magistrate is not compellable to administer an oath, virtute officii, under a law of the United States which expressly confers power on him for that purpose; still, if he should choose to administer an oath under such a law, there can be no doubt, that it would - be a lawful oath, by one having competent authority; and as much so, as if he had been specially appointed a commissioner under a law of the United States, for that purpose. And we think,-that such an oath administered under such circumstances, would- clearly be within the provision of the act of 1823. That act does not create or punish the crime of perjuiy, technically considered. But it creates a new and substantive offence of false swearing, and punishes it in .the same manner as perjury. The oath, therefore, need not be administered in a judicial proceeding, or in a case of which the state magistrate., under the state laws, had judicial jurisdiction, so as to make the false swearing perjury. It would be sufficient that it might be.lawfully administered.by the magistrate, and was not in violation of his official duty.
There being no express authority given by. any law of the United States, to any state magistrate, to administer an oath in the present case, the next inquiry naturally presented is, whether the secretary of the treasury'had an implied power to require, authorize, alia./ or admit any affidavits sworn before f ‘.ate magistrates, in proof or in support-of any claim under the act of 1832; foe if he had, it would be very difficult to show that such an affidavit is not within the true intent and meaning of the act,of -1823, as it certainly is within the very words of the enactment. The policy of the act clearly extends to such a case; and the public mischief to-be remedied is precisely the same, as if the affidavit had been taken under the express and direct--authority of a statute of the United States.
And we are of opinion, that the secretary of the treasury did, by implication, possess the power to make such a regulation, and to allow such affidavits in proof of claims, under the act of 1832.- It was incident to his duty and authority, in settiing claims, under that act. The third section provides “ that the *255 secretary of the treasury be, and he is hereby directed and' required to adjust and settle those claims for half pay of the officers of the aforesaid regiment and corps, which have not been paid, &c.; which several sums of money herein directed to be settled or paid, shall be paid out of any money in the treasury not otherwise appropriated by law.” It is a general principle of law, in the construction of all powers of this sort, that where the end is required, the appropriate means are given. It is the ' duty of the secretary to adjust and settle these claims, and in order to do so he must have authority to require suitable vouchers and evidence of the facts, which are to establish the claim. No one can well doubt the propriety of requiring the facts which are to support a claim, and rest on testimony, tobe established under the sanction of an oath; and especially in cases of the nature of those which are referred to in the act, ' where1 the facts are so remote in point of time, and must be so various in point of force and bearing. It cannot be presumed that congress were insensible of these considerations, or intended to deprive the secretary of the treasury of the fullest use of the best means to accomplish the end, viz. to suppress frauds, and to ascertain, and allow just claims-. It is certain,.that the laws of the United States have, in various cases of a similar nature, from the earliest existence of the government-down to t he present time, required the proof of claims against the govern-inent to be by affidavit. In some of these laws authority has been given to judicial officers of the United States to administer the oaths for this purpose; and at least as early as 1818, a similar-authority was confided to state magistrates. The citations from the laws, made at the argument, are direct to this point, and establish in the clearest manner a habit of legislation to this effect, (a) It may be added, that it has been stated by the attorney-general, and is Of public notoriety, that there has been a constant practice and usage in the treasury department in claims against the United States, and especially of a nature like the present, to require evidence by affidavits in support of the claim, whether the same has been expressly *256 required by statute or not; and that, occasionally, general regulations have been adopted in the treasury department for this purpose.
Congress must be presumed to have legislated under this known state of the laws and usage of the treasury department. The very circumstance that the treasury department had, for a long period, required solemn verifications of claims against the United States, under oath, as an appropriate means to. secure the government against frauds, without objection ; is decisive to show that it was not deemed an usurpation of authority.
The language of the act of 1823 should, then, be construed with reference to this usage. The false swearing and false affirmation, referred to in the act, ought to be construed to include all cases of swearing and affirmation required by the practice of the department in regard to- the expenditure of public money, of in support of any claims against the United States. The language of the act is sufficiently broad to include' all such cases; and we can perceive no reason for excepting them from the words, as they are within the policy of the act, and the mischief to be remedied. The act does-mo more than change a common law offence into a statute offence.
There is nothing new in this doctrine. It is clear, by the common law, that the taking of a false path, with a view to cheat the government, or to defeat the administration of public justice, though not taken within the realm, or wholly dependent upon usage and practice, is punishable as a misdemeanour. The case of Ó’Mealy v. Newell, 8 East’s Rep. 364, affords an . illustration of this doctrine. In that case.it was held, that a person making, .or knowingly using a false affidavit of debt, sworn before a foreign magistrate, in a foreign country, for the purpose of holding a party to bail in England; although such affidavit' was not authorized by any statute, but was solely dependent upon the practice and usage of the courts, of England; was punishable as a misdemeanour at the common law, as an attempt to pervert public justice. Upon this occasion Lord Ellenborough, after alluding to the practice of receiving such affidavits made in Ireland and Scotland, as well as in foreign countries, said; the practice in both cases must be equally warranted or unwarranted. In none of these cases *257 can the party making a false affidavit be indicted specifically, for the crime of perjury, in the courts of this country. But in all of them, as far as he is punishable at all, he is punishable for a misdemeanour, in'procuring the court to make an order to hold to bail, by means and upon the credit of a false and fraudulent voucher of a fact produced and published by him for that purpose. And the court held the practice.perfectly justifiable.
Upon the .whole, we are of opinion that where the oath is ■ taken before a state or national magistrate, authorized to administer oaths, in pursuance of .any regulations prescribed by the treasury department, or in conformity with the practice, and usage of the treasury department, so that the affidavit would be admissible evidence at the department in -support of any claim against the United States, and the parly swears falsely, the case is within the purview of- the act of 1823, ch. 165. It will be accordingly certified to the circuit court, that the said Josiah Reed, named in the certificate of division of the judges of the circuit court, being a justice of the peace of the commonwealth of Kentucky, authorized by the .laws of that state to administer oaths, had authority and jurisdiction to administer the oath, and take the affidavit in the said certificate • of division mentioned; and that if the -facts staled-therein were falsely sworn to, the case is within the.act of congress of the 1st day of March 1823, referred to in the same certificate.

 Act of 28th of February 1793, ch. 61, [17], Act of 3d March 1803, ch. 90. Act of 10th of April 1806, ch. 25. Act of 18th of March 1818, ch. 18. Act. of 1st of May 1820, ch. 51. Act of 3d of March 1823, ch. 187.