*In re* KOLLOCK, Petitioner.

ORIGINAL.

No. 9. Original. Argued January 25, 1897. — Decided March 1, 1897.

The act of August 2, 1886, c. 840, imposing a tax upon, and regulating the manufacture, sale, etc. of oleomargarine, required packages thereof to be marked and branded; prohibited the sale of packages that were not, and prescribed the punishment of sales in violation of its provisions. It authorized the Commissioner of Internal Revenue to make regulations describing the marks, stamps and brands to be used. *Held*, that such leaving the matter of designating the marks, brands and stamps to the Commissioner, with the approval of the Secretary, involved no unconstitutional delegation of power.

KOLLOCK was indicted in the Supreme Court of the District of Columbia for the violation of the sixth section of the act of Congress approved August 2, 1886, 24 Stat. 209, c. 840, entitled "An act defining butter, also imposing a tax upon and regulating the manufacture, sale, importation and exportation of oleomargarine"; and also for carrying on in the District the business of a retail dealer in oleomargarine without having paid the special tax thereon. He was arraigned,

tried and convicted on each indictment and was sentenced to fine and imprisonment on the first, and to fine on the second, with costs on both, and to stand committed further in default of payment.

December 14, 1896, he was committed to the custody of the United States marshal of the District of Columbia, and on the same day filed his petition in this court alleging that he was deprived of his liberty unlawfully, in that the law under which he was convicted is in violation of the Constitution and laws of the United States, for the reason that "it is not within the power of the Congress of the United States under the Constitution of the United States to delegate to the Commissioner of Internal Revenue or the Secretary of the Treasury of the United States, or any other person, authority or power to determine what acts shall be criminal, and the said act of Congress aforesaid does not sufficiently define, or define at all, what acts done or omitted to be done within the supposed purview of the said act shall constitute an offence or offences against the United States"; and praying for a writ of *habeas corpus.*

Leave was given to file the petition and a rule to show cause was entered thereon, petitioner being admitted to bail, to which the marshal made return that he held petitioner pursuant to the judgment and sentence of the Supreme Court of the District of Columbia, until he was released from custody on giving bail in compliance with the order of this court.

It appeared that Kollock had appealed to the Court of Appeals of the District of Columbia, which affirmed the judgments below, 25 Wash. Law Rep. 41, in accordance with the decision of that court in *Prather* v. *United States*, 24 Wash. Law Rep. 395.

The act of Congress in question consists of twenty-one sections: Sections 1 and 2 define butter and oleomargarine; section 3 imposes special taxes on manufacturers, wholesale dealers and retail dealers in oleomargarine; section 4 prescribes penalties for carrying on business as manufacturer, wholesale dealer and retail dealer without payment of

taxes; and section 5, the duty of the manufacturer as to notice, etc., keeping books, etc., and conduct of business.

Section 6 is as follows:

" That all oleomargarine shall be packed by the manufacturer thereof in firkins, tubs or other wooden packages not before used for that purpose, each containing not less than ten pounds, and marked, stamped and branded as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe; and all sales made by manufacturers of oleomargarine, and wholesale dealers in oleomargarine shall be in original stamped packages. Retail dealers in oleomargarine must sell only from original stamped packages, in quantities not exceeding ten pounds, and shall pack the oleomargarine sold by them in suitable wooden or paper packages, which shall be marked and branded as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe. Every person who knowingly sells or offers for sale, or delivers or offers to deliver, any oleomargarine in any other form than in new wooden or paper packages as above described, or who packs in any package any oleomargarine in any manner contrary to law, or who falsely brands any package or affixes a stamp on any package denoting a less amount of tax than that required by law, shall be fined for each offence not more than one thousand dollars, and be imprisoned not more than two years."

Section 7 provides that every manufacturer shall affix a label on each package manufactured under penalty; section 8, for a tax on the manufacture to be represented by coupon stamps, the requirements of law as to stamps relating to tobacco and snuff being made applicable; section 9, for the assessment of taxes on oleomargarine sold without using stamps; section 10, for an additional tax on imported oleomargarine; section 11, a penalty for purchasing or receiving for sale any oleomargarine not branded or stamped according to law; section 12, a penalty for purchasing or receiving for sale any oleomargarine from any manufacturer who has not paid the special tax; section 13, for the destruction of stamps on

stamped packages when empty; and section 14, for a chemist and microscopist in the office of the Commissioner, etc.; and the Commissioner is authorized to decide what substances, etc., submitted to inspection in contested cases shall be taxed under the act.

Section 15 is as follows:

"That all packages of oleomargarine subject to tax under this act, that shall be found without stamps or marks as herein provided, and all oleomargarine intended for human consumption which contains ingredients adjudged, as hereinbefore provided, to be deleterious to the public health, shall be forfeited to the United States.

"Any person who shall wilfully remove or deface the stamps, marks or brands on packages containing oleomargarine taxed as provided herein shall be guilty of a misdemeanor, and shall be punished by a fine of not less than one hundred dollars nor more than two thousand dollars, and by imprisonment for not less than thirty days nor more than six months."

Section 16 provides for the exportation of oleomargarine; and section 17 imposes a penalty for fraud by the manufacturer in relation to the tax.

Section 18 is as follows:

"That if any manufacturer of oleomargarine, any dealer therein or any importer or exporter thereof shall knowingly or wilfully omit, neglect or refuse to do, or cause to be done, any of the things required by law in the carrying on or conducting of his business, or shall do anything by this act prohibited, if there be no specific penalty or punishment imposed by any other section of this act for the neglecting, omitting or refusing to do, or for the doing or causing to be done, the thing required or prohibited, he shall pay a penalty of one thousand dollars; and if the person so offending be the manufacturer of or a wholesale dealer in oleomargarine, all the oleomargarine owned by him, or in which he has any interest as owner, shall be forfeited to the United States."

Section 19 provides for the recovery of fines, etc.

Sections 20 and 21 read:

"Sec. 20. That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may make all needful regulations for the carrying into effect of this act.

"Sec. 21. That this act shall go into effect on the ninetieth day after its passage; and all wooden packages containing ten or more pounds of oleomargarine found on the premises of any dealer on or after the ninetieth day succeeding the date of the passage of this act shall be deemed to be taxable under section eight of this act, and shall be taxed, and shall have affixed thereto the stamps, marks and brands required by this act or by regulations made pursuant to this act; and for the purposes of securing the affixing of the stamps, marks and brands required by this act, the oleomargarine shall be regarded as having been manufactured and sold, or removed from the manufactory for consumption or use, on or after the day this act takes effect; and such stock on hand at the time of the taking effect of this act may be stamped, marked and branded under special regulations of the Commissioner of Internal Revenue, approved by the Secretary of the Treasury; and the Commissioner of Internal Revenue may authorize the holder of such packages to mark and brand the same and to affix thereto the proper tax-paid stamps."

The first indictment against Kollock set forth that pursuant to the authority conferred on the Commissioner of International Revenue by the sixth section of the act of August 2, 1886, "the said Commissioner, with the approval of the Secretary of the Treasury, did, on the twelfth day of March, in the year of our Lord one thousand eight hundred and ninety-one, prescribe certain regulations, in substance and to the effect, among other things, that the wooden or paper packages in which retail dealers in oleomargarine were required by said act of Congress to pack the oleomargarine sold by them, such retail dealers, should have printed or branded upon them in the case of each sale the name and address of the retail dealer making the same; likewise the words 'pound' and 'oleomargarine' in letters not less than one quarter of an inch square, and likewise a figure or figures of the same size indicating (in connection with said words 'pound' and 'oleomargarine') the

quantity of oleomargarine so sold, written, printed or branded on such wooden or paper packages and placed before the said word 'pound,' and that the said words 'oleomargarine' and 'pound' so required to be printed or branded on such packages as aforesaid in the case of each sale as aforesaid and the said figure or figures so indicative of quantity as aforesaid in the case of each sale as aforesaid and so required to be written, printed or branded on such packages as aforesaid should be so placed thereon as to be plainly visible to the purchaser at the time of the delivery to him, such purchaser, by such retail dealers of the oleomargarine sold to such purchaser, by them, such retail dealers."

And thus continued:

" That on the fourteenth day of January, in the year of our Lord one thousand eight hundred and ninety-six, and at the District aforesaid, one Israel C. Kollock, late of the District aforesaid, being then and there engaged in business as a retail dealer in oleomargarine at a store of him, the said Israel C. Kollock, situated on Fourth street southeast, in the city of Washington, in the said District, did then and there and at said store knowingly sell and deliver to a certain Florence Davis one half of one pound of oleomargarine as and for butter, which said one half of one pound of oleomargarine was not then and there and at the time of such sale and delivery thereof packed in a new wooden or paper package having then and there printed or branded thereon the name and address of him, the said Israel C. Kollock, in letters one quarter of an inch square and the words 'pound' and 'oleomargarine' in letters of like size and a figure or figures of like size written, printed or branded thereon indicative (in connection with said words 'pound' and 'oleomargarine') of the quantity of oleomargarine so sold and delivered to her, the said Florence Davis, as aforesaid, and which said one half of one pound of oleomargarine at the time it was so knowingly sold and delivered to her, the said Florence Davis, as aforesaid, by him, the said Israel C. Kollock, as aforesaid, was then and there and at the time of the sale and delivery thereof as aforesaid packed in a paper package upon which there had not

been printed, branded or written any or either of the marks and characters aforesaid so required by the said regulations to be placed thereon as aforesaid, as he, the said Israel C. Kollock, then and there well knew, against the form of the statute, etc."

*Mr. Jeremiah M. Wilson* and *Mr. Henry E. Davis* for petitioner.

*Mr. Solicitor General* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

By the terms of the act, manufacturers of oleomargarine are required to pack it in wooden packages " marked, stamped and branded as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe "; and all sales by manufacturers and wholesale dealers must be in "original stamped packages."

Retail dealers are required to "pack the oleomargarine sold by them in suitable wooden or paper packages, which shall be marked and branded as the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall prescribe."

And fine and imprisonment are denounced on "every person who knowingly sells or offers for sale, or delivers or offers to deliver, any oleomargarine in any other form than in new wooden or paper packages as above described, or who packs, in any package any oleomargarine in any manner contrary to law, or who falsely brands any package or affixes a stamp on any package denoting a less amount of tax than that required by law."

Kollock was convicted as a retail dealer in oleomargarine of knowingly selling and delivering one half pound of that commodity, which was not packed in a wooden or paper package bearing thereon any or either of the marks or characters provided for by the regulations and set forth in the indict-

ment. It is conceded that the stamps, marks and brands were prescribed by the regulations, and it is not denied that Kollock had the knowledge, or the means of knowledge, of such stamps, marks and brands. But it is argued that the statute is invalid because it "does not define what act done or omitted to be done shall constitute a criminal offence," and delegates the power "to determine what acts shall be criminal" by leaving the stamps, marks and brands to be defined by the Commissioner.

We agree that the courts of the United States, in determining what constitutes an offence against the United States, must resort to the statutes of the United States, enacted in pursuance of the Constitution. But here the law required the packages to be marked and branded; prohibited the sale of packages that were not; and prescribed the punishment for sales in violation of its provisions; while the regulations simply described the particular marks, stamps and brands to be used. The criminal offence is fully and completely defined by the act and the designation by the Commissioner of the particular marks and brands to be used was a mere matter of detail. The regulation was in execution of, or supplementary to, but not in conflict with, the law itself, and was specifically authorized thereby in effectuation of the legislation which created the offence. We think the act not open to the objection urged, and that it is disposed of by previous decisions. *United States* v. *Bailey*, 9 Pet. 238; *United States* v. *Eaton*, 144 U. S. 677; *Caha* v. *United States*, 152 U. S. 211.

In the last case Caha had been convicted of perjury, under section 5392 of the Revised Statutes, in a contest in a local land office in respect of the validity of a homestead entry, the oath having been administered by one of the land officers before whom the contest had been carried on. It was contended that the indictment alleged no offence, because the statute made no provision for such a contest before those officers, and, therefore, it could not be said that the oath was taken in a " case in which a law of the United States authorized an oath to be administered."

But it was held by this court, in view of the general grant

of authority to the land department to prescribe appropriate regulations for the disposition of the public lands, the rules and regulations prescribed by that department for contests in all cases of such disposition, including homestead entries; and the frequent recognition by acts of Congress of contests in respect to that class of entries, that the local land officers in hearing and deciding upon a contest as to a homestead entry constituted a competent tribunal, and the contest so pending before them was a case in which the laws of the United States authorized an oath to be administered.

As bearing on the case in hand, we cannot do better than to quote at length from Mr. Justice Brewer, delivering the opinion, (p. 218) as follows:

"This is not a case in which the violation of a mere regulation of a department is adjudged a crime. *United States* v. *Bailey,* 9 Pet. 238, is in point. There was an act of Congress making false testimony in support of a claim against the United States perjury, and the defendant in that case was indicted for making a false affidavit before a justice of the peace of the Commonwealth of Kentucky in support of a claim against the United States. It was contended that the justice of the peace, an officer of the State, had no authority under the acts of Congress to administer oaths, and that, therefore, perjury could not be laid in respect to a false affidavit before such officer. It appeared, however, that the Secretary of the Treasury had established, as a regulation for the government of his department and its officers in their action upon claims, that affidavits taken before any justice of the peace of any of the States should be received and considered in support of such claims. And upon this the conviction of perjury was sustained, Mr. Justice McLean alone dissenting. It was held that the Secretary had power to establish the regulation, and that the effect of it was to make the false affidavit before the justice of the peace perjury within the scope of the statute, and this notwithstanding the fact that such justice of the peace was not an officer of the United States. Much stronger is the case at bar, for the tribunal was composed of officers of the government of the United States; it was created

by the land department in pursuance of express authority from the acts of Congress. This perjury was not merely a wrong against that tribunal or a violation of its rules or requirements; the tribunal and the contest only furnished the opportunity and the occasion for the crime, which was a crime defined in and denounced by the statute.

"Nor is there anything in the case of *United States* v. *Eaton,* 144 U. S. 677, 688, conflicting with the views herein expressed. In that case the wrong was in the violation of a duty imposed only by a regulation of the Treasury Department. There was an act entitled 'An act defining butter; also imposing a tax upon and regulating the manufacture, sale, importation and exportation of oleomargarine,' which contained several sections forbidding particular acts, and imposing penalties for violation thereof. And in addition there was a general provision in section 18 that 'if a party shall knowingly, or wilfully, omit, neglect, or refuse to do, or cause to be done, any of the things required by law in the carrying on or conducting of his business, or shall do anything by this act prohibited, . . . he shall pay a penalty,' etc. There was authority given to the Commissioner of Internal Revenue to make all needful regulations for carrying into effect the act. In pursuance of that authority the Commissioner required the keeping of a book in a certain form, and the making of a monthly return—matters which were in no way referred to in the various sections of the statute prescribing the duties resting upon the manufacturer or dealer in oleomargarine, although subsequently to this statute, and subsequently to the offence complained of, and on October 1, 1890, Congress passed an act, by section 41 of which wholesale dealers in oleomargarine were required to keep such books and render such returns in relation thereto as the Commissioner of Internal Revenue should require. It was held by this court that the regulation prescribed by the Commissioner of Internal Revenue, under that general grant of authority, was not sufficient to subject one violating it to punishment under section 18. It was said by Mr. Justice Blatchford, speaking for the court: 'It is necessary that a sufficient statutory authority should exist for

declaring any act or omission a criminal offence; and we do not think that the statutory authority in the present case is sufficient. If Congress intended to make it an offence for wholesale dealers in oleomargarine to omit to keep books and render returns as required by regulations. to be made by the Commissioner of Internal Revenue, it would have done so distinctly, in connection with an enactment such as that above recited, made in section 41 of the act of October 1, 1890.

"'Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offence in a citizen, where a statute does not distinctly make the neglect in question a criminal offence.'

"This, it will be observed, is very different from the case at bar, where no violation is charged of any regulation made by the department. All that can be said is that a place and an occasion and an opportunity were provided by the regulations of the department, at which the defendant committed the crime of perjury in violation of section 5392. We have no doubt that false swearing in a land contest before the local land office in respect to a homestead entry is perjury within the scope of said section."

The act before us is on its face an act for levying taxes, and although it may operate in so doing to prevent deception in the sale of oleomargarine as and for butter, its primary object must be assumed to be the raising of revenue. And, considered as a revenue act, the designation of the stamps, marks and brands is merely in the discharge of an administrative function and falls within the numerous instances of regulations needful to the operation of the machinery of particular laws, authority to make which has always been recognized as within the competency of the legislative power to confer. *United States* v. *Symonds*, 120 U. S. 46; *Ex parte*

*Reed,* 100 U. S. 13; *Smith* v. *Whitney,* 116 U. S. 167; *Wayman* v. *Southard,* 10 Wheat. 1.

We concur with the Court of Appeals that this provision does not differ in principle from those of the Internal Revenue laws, which direct the Commissioner of Internal Revenue to prepare suitable stamps to be used on packages of cigars, tobacco and spirits; to change such stamps when deemed expedient; and to devise and regulate the means for affixing them. Rev. Stat. §§ 3312, 3395, 3445, 3446, etc.

By section 3446, the Secretary and the Commissioner were empowered to alter or renew or change the form, style and device "of any stamp, mark or label used under any provision of the laws relating to distilled spirits, tobacco, snuff and cigars, when in their judgment necessary for the collection of revenue taxes and the prevention or detection of frauds thereon; and may make and publish such regulations for the use of such mark, stamp or label as they find requisite"; and by the act of March 1, 1879, 20 Stat. 327, 351, c. 125, § 18, the section was amended so as to provide that the Commissioner, with the approval of the Secretary, might "establish and, from time to time, alter or change the form, style, character, material and device of any stamp, mark or label used under any provision of the laws relating to internal revenue." The oleomargarine legislation does not differ in character from this, and the object is the same in both, namely, to secure revenue by internal taxation and to prevent fraud in the collection of such revenue. Protection to purchasers in respect of getting the real and not a spurious article cannot be held to be the primary object in either instance, and the identification of dealer, substance, quantity, etc., by marking and branding must be regarded as means to effectuate the objects of the act in respect of revenue.

And we are of opinion that leaving the matter of designating the marks, brands and stamps to the Commissioner, with the approval of the Secretary, involved no unconstitutional delegation of power.

*Writ denied.*