### UNITED STATES v. 11,150 POUNDS OF BUTTER.

(District Court, D. Minnesota, Third Division.    June 7, 1911.)

**Food** (§ 24*)—Regulation—Standard—Secretary of Agriculture—Powers.
    Though Act Cong. Aug. 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2228), authorized the Secretary of the Treasury to prescribe rules and regulations for carrying it into effect, it did not authorize him to promulgate a rule construing Act May 9, 1902, c. 784, § 4, 32 Stat. 194 (U. S. Comp. St. Supp. 1909, p. 865), declaring that butter should be confiscated if it contained an abnormal quantity of moisture, by providing that it should be confiscated if it contained more moisture than 16 per cent.
    [Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

Action by the United States against 11,150 Pounds of Butter. Dismissed.

At the close of the testimony on the part of the government, counsel for defendant moved to dismiss the action on the ground that the government had failed to make out a case, and that there is no evidence as to what constitutes an abnormal quantity of water, milk, or cream.

C. C. Houpt, U. S. Dist. Atty.
Lightner & Young, for defendant.

WILLARD, District Judge (orally). As I have said before in the discussion of this motion, I entertain no doubt concerning the power of Congress to confer upon the Secretary authority to make a rule or regulation fixing a standard; but the question in this case is: Did Congress confer such power upon the Secretary? It is conceded that such power is not conferred in any express terms, and that, if it is conferred at all, it is conferred by that clause of the act which gives the Secretary power to make rules and regulations to carry the act into effect. Act Aug. 2, 1886, c. 840, 24 Stat. 209 (U. S. Comp. St. Supp. 1901, p. 2228).

The validity of rules and regulations made by secretaries of departments under similar statutes has been before the Supreme Court in quite a large number of cases. The latest decision, filed on the 1st day of May of this year, is found in the case of the United States v. Grimaud et al., 220 U. S. 506, 31 Sup. Ct. 483, 55 L. Ed. ——, where the court said:

"From the beginning of the government various acts have been passed conferring upon executive officers power to make rules and regulations—not for the government of their departments, but for administering the laws which did govern. None of these statutes could confer legislative power. But, when Congress had legislated and indicated its will, it could give to those who were to act under such general provisions 'power to fill up the details' by the establishment of administrative rules and regulations, the violation of which could be punished by fine or imprisonment fixed by Congress, or by penalties fixed by Congress or measured by the injury done.

"Thus it is unlawful to charge unreasonable rates or to discriminate between shippers, and the Interstate Commerce Commission has been given authority to make reasonable rates and to administer the law against discrimina-

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion.    Interstate Commerce Commission v. Ill. Cent. R. R., 215 U. S. 452 [30 Sup. Ct. 155, 54 L. Ed. 280]; Interstate Commerce Commission v. Chicago, Rock Island, etc., R. R., 218 U. S. 88 [30 Sup. Ct. 651, 54 L. Ed. 946]. Congress provided that after a given date only cars with drawbars of uniform height should be used in interstate commerce, and then constitutionally left to the Commission the administrative duty of fixing a uniform standard. St. Louis & Iron Mountain R. R. v. Taylor, 210 U. S. 287 [28 Sup. Ct. 616, 52 L. Ed. 1061]. In Union Bridge Co. v. United States, 204 U. S. 364 [27 Sup. Ct. 367, 51 L. Ed. 523], In re Kollock, 165 U. S. 526 [17 Sup. Ct. 444, 41 L. Ed. 813], and Buttfield v. Stranahan, 192 U. S. 470 [24 Sup. Ct. 349, 48 L. Ed. 525], it appeared from the statutes involved that Congress had either expressly or by necessary implication made it unlawful, if not criminal, to obstruct navigable streams, to sell unbranded oleomargarine, or to import unwholesome teas. With this unlawfulness as a predicate, the executive officers were authorized to make rules and regulations appropriate to the several matters covered by the various acts. A violation of these rules was then made an offense punishable as prescribed by Congress. But in making these regulations the officers did not legislate. They did not go outside of the circle of that which the act itself had affirmatively required to be done, or treated as unlawful if done. But, confining themselves within the field covered by the statute, they could adopt the regulations of the nature they had thus been generally authorized to make, in order to administer the law and carry the statute into effect."

That case related to a regulation made by the Secretary of Agriculture with regard to forest reserves. The regulation was sustained, but the authority given to the Secretary was much more broad and explicit in that case than in this case. By various statutes he was authorized to—

"make provision for the protection against destruction by fire and depredations upon the public forests and forest reservations; * * * and he may make such rules and regulations and establish such service as will insure the objects of such reservation, namely, to regulate their occupancy and use, and to preserve the forests thereon from destruction."

This is something more than a mere statement that the Secretary may make rules and regulations for the purpose of carrying the law into effect.

The court, speaking of the regulations there in question, further said:

"As to those here involved, they all relate to matters clearly indicated and authorized by Congress. The subjects as to which the Secretary can regulate are defined. The lands are set apart as a forest reserve. He is required to make provision to protect them from depredations and from harmful uses. He is authorized 'to regulate the occupancy and use and to preserve the forests from destruction.'"

In re Kollock, 165 U. S. 526, on page 533, 17 Sup. Ct. 444, on page 446 (41 L. Ed. 813), had to do particularly with section 6 of the Oleomargarine Act of August 2, 1886. That section expressly conferred upon the Commissioner of Internal Revenue power to prescribe the stamps and brands to be affixed to the packages. The court said:

"The criminal offense is fully and completely defined by the act, and the designation by the Commissioner of the particular marks and brands to be used was a mere matter of detail. The regulation was in execution of, or supplementary to, but not in conflict with, the law itself, and was specifically authorized thereby in effectuation of the legislation which created the offense."

The law under consideration in Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525, expressly authorized the Secretary of the Treasury "to fix and establish uniform standards of purity, quality, and fitness for consumption of all kinds of teas imported into the United States."

In Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523, and in Hannibal Bridge Co. v. United States, 221 U. S. 194, 31 Sup. Ct. 603, 55 L. Ed. —— (May 15, 1911), the court discussed section 18 of the River & Harbor Act of March 3, 1899, c. 425, 30 Stat. 1153 (U. S. Comp. St. 1901, p. 3545). That act expressly authorized the Secretary of War to determine whether any railroad or other bridge over navigable waterways was an unreasonable obstruction to navigation. It was not held in those and other bridge cases that a law authorizing the Secretary to make rules and regulations to carry into effect acts of Congress relating to his department would justify him in making a general rule relating to all bridges, declaring what should be considered as an unreasonable obstruction to navigation.

In St. Louis & Iron Mountain Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, the law involved was the Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174).

"Briefly stated. the statute enacted that after a date named only cars with drawbars of uniform height should be used in interstate commerce."

Section 5 of the act expressly authorized the Interstate Commerce Commission to determine the standard height of drawbars for freight cars.

In Roughton v. Knight, 219 U. S. 537, 31 Sup. Ct. 297, 55 L. Ed. —— (February 20, 1911), the court said:

"But the act did not prescribe the method by which one so situated might avail himself of the proposal. It was therefore competent for the Land Department to adopt rules and regulations for the administration of the act in this particular, and this was done, and these rules are found in 24 Land Dec. Dep. Int. 592, 593."

In Baltimore & Ohio R. Co. v. Interstate Commerce Commission, 220 U. S. 94, 31 Sup. Ct. 621, 55 L. Ed. —— (May 29, 1911), there was under discussion an order of the Commission requiring the railroad companies to make certain reports connected with the Act of March 4, 1907, c. 2939, 34 Stat. 1415 (U. S. Comp. St. Supp. 1909, p. 1170), relative to labor of employés. The order was held valid because Congress had given to the Commission not only authority to execute the act, but express authority to require reports.

Referring again to the Grimaud Case, the court said that the Secretary of Agriculture could not make rules and regulations for any and every purpose, and cited the case of Williamson v. United States, 207 U. S. 462, 28 Sup. Ct. 163, 52 L. Ed. 278. That was a case relating to the land laws. The Secretary of the Interior had made a regulation prescribing a form, according to which upon final proof under the timber and stone act the applicant was required to state under oath that he had not alienated the land or made any contract to alienate it.

The law itself required him to make such an affidavit when he entered the land; but the court held that there was nothing in the law which required him to make such an affidavit upon final proof, held that the Secretary of the Interior had no power by regulation to add anything to the law, or to require anything which the law itself did not require, and declared the regulation void.

The regulation in this case impresses me as being of the same character. Act Cong. May 9, 1902, c. 784, § 4, 32 Stat. 194 (U. S. Comp. St. Supp. 1909, p. 865), said that butter should be confiscated if it contained an abnormal quantity of moisture; the Secretary says that it shall be confiscated it if contains more than 16 per cent. The Secretary has stricken out the word "abnormal," and has inserted the words "more than 16 per cent." To my mind this is not a regulation for the purpose of carrying the law into effect; it is rather a rule for the construction of the law. It is a change in the law; it is fixing a standard which Congress never intended that the Secretary should have the power to fix. While the execution of the law must be given to the administrative department, its construction must be left with the courts. Could the Secretary by rule define the meaning of the word "absorption"? There is a variety of words in this law, the definition of each one of which must be left to the courts as questions arise thereunder, and the decisions of the courts upon these questions cannot be foreclosed by a regulation of the department declaring that certain words must be construed in a manner previously determined by it, unless Congress has given to the Secretary express power to define them. No such power is found anywhere in this law.

The government has introduced no evidence to show that the quantity of moisture in this butter was abnormal. The only evidence which it has presented tends to show that the quantity exceeded 16 per cent., and the claim of the government is that such evidence conclusively shows a case for confiscation. If the regulation fixing the standard is not conclusive, the district attorney makes no claim that it is prima facie evidence of what an abnormal quantity of moisture is, and does not ask to go to the jury upon that theory of the rule.

The motion is granted, and the case is dismissed, without prejudice.