## UNITED STATES v. BALLARD.

District Court, W. D. Kentucky, Louisville Division.

Oct. 30, 1935.

Bunk Gardner, U. S. Dist. Atty., and Eli H. Brown, 3d, Asst. U. S. Dist. Atty., both of Louisville, Ky., for the United States.

Frank E. Daugherty and Claude Hudgins, both of Louisville, Ky., for defendant.

HAMILTON, District Judge.

This case comes before the court on a motion for new trial, and a reconsideration of the demurrer to the indictment, which was overruled immediately before the case was tried due to lack of time on the part of the court to give consideration to the question raised.

The indictment contains four counts, three alleging identical offenses committed on different dates. The substance of the first count is as follows: "* * * on or about the 11th day of June, in the year of our Lord, 1935, at Loretto, in Marion County, Kentucky, in said district and within the jurisdiction of this court, Raymond Ballard, late of said district, unlawfully did then and there knowingly, wilfully and feloniously violate the Internal Revenue Laws of the United States, and particularly section 275, Title 26, United States Code, Annotated [26 USCA § 1162a] and Treasury Department Regulations 17 made pursuant thereto; that is to say, at said time and place the said Raymond Ballard sold, consigned, or otherwise disposed of quantities of sugar in lots exceeding fifty pounds each to one or more individuals, a further description being unknown to the Grand Jurors, which sales, consignments or dispositions the defendant Raymond Ballard unlawfully, knowingly and wilfully failed to report to the District Supervisor, Alcohol Tax Unit, Louisville, Kentucky, as provided in Article 2 of Treasury Department Regulation No. 17, effective September 11, 1934."

Two of the other counts are stated in exactly the same language, except the offense is alleged to have been committed on a different day.

The material part of the fourth count is as follows: "* * * knowingly, wilfully and feloniously violate the Internal Revenue Laws of the United States, and particularly section 275, Title 26, United States Code, Annotated and Treasury Department Regulations 17 made pursuant thereto; that is to say, during said time and at said place, the defendant Raymond Ballard did unlawfully, knowingly and wilfully fail and refuse to keep in his place of business books, papers, bills of lading, invoices and other papers and documents relating to sales, consignments or other dispositions of sugar and other articles as required by Ar-

ticle 3, Treasury Department Regulations No. 17, effective September 11, 1934."

The demurrer and the motion for new trial are based on two grounds: (1) That the Joint Resolution of the Congress of June 18, 1934, c. 611, 48 Stat. 1020, 26 US CA § 275 (26 USCA § 1162a), is unconstitutional and void; and (2) that the regulations which it is alleged the defendant violated are void and in violation of the Constitution, and in no event authorized under the act. The act reads as follows: "Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, That every person disposing of any substance of the character used in the manufacture of distilled spirits shall, when required by the Commissioner, render a correct return in such form and manner as the Commissioner, with the approval of the Secretary of the Treasury, may by rules and regulations prescribe, showing the names and addresses of the persons to whom such disposition was made, with such details, as to the quantity so disposed of or other information which the Commissioner may require as to each such disposition, as will enable the Commissioner to determine whether all taxes due with respect to any distilled spirits manufactured from such substances have been paid. Any person who willfully violates any provision hereof, or of any such rules or regulations, and any officer, director, or agent of any such person who knowingly participates in such violation, shall upon conviction be fined not more than $500 or be imprisoned for not more than one year, or both. As used in this joint resolution (a) the term 'distilled spirits' has the same meaning as that in which it is used in title II of the Liquor Taxing Act of 1934; (b) the term 'person' includes individuals, corporations, partnerships, associations, trusts, and other incorporated and unincorporated organizations; (c) 'Commissioner' means the Commissioner of Internal Revenue; and (d) the term 'substance of the character used in the manufacture of distilled spirits' includes, but not by way of limitation, molasses, corn sugar, cane sugar, and malt sugar."

The regulations said to have been promulgated as authorized under the act are as follows:

"Article I—Definitions. In these regulations the following words and phrases shall, unless otherwise stated, be considered as having the meaning herein defined:

"(a) 'Act' shall mean the Joint Resolution of Congress No. 373, approved June 18, 1934, entitled 'Joint Resolution to protect the revenue by requiring information concerning the disposition of substances used in the manufacture of distilled spirits.'

"(b) 'Commissioner' shall mean the Commissioner of Internal Revenue.

"(c) 'Supervisor' shall mean District Supervisor of the Alcohol Tax Unit of the Bureau of Internal Revenue.

"(d) 'Substance' shall mean cane molasses of the grade commonly known as blackstrap molasses, corn sugar, beet sugar, and cane sugar; yeast; and oak chips, charred and not charred.

"(e) 'United States' shall mean the Continental United States and the outlying possessions to which the Internal Revenue laws apply.

"(f) Words in the singular shall include the plural.

"Article II—Returns. Every person in the United States who consigns, sells or otherwise disposes of any substance, as defined in paragraph (d) of Article I of these regulations, shall when required in writing by the Commissioner or Supervisor, tender in writing a correct return under oath showing (1) the date of the consignment, sale, or other disposition of the substance; (2) the quantity and kind of the substance consigned, sold, or otherwise disposed of; (3) the name and complete address of the purchaser, or person to whom disposition is made, and if the sale or disposition is made by or through any other person, the name and complete address of such other person; (4) the name and complete address of the consignee, (5) the date and method of shipment or delivery, such as by truck, or other conveyance, and the state or city registration number of such truck or other conveyance, if any; (6) the name and complete address of the driver of such truck, or other conveyance; (7) the name and complete address of the person to whom actual delivery has been, or is to be, made; and (8) the exact date of such delivery, or proposed delivery. Where shipment is made by a common carrier, such as a railroad, trucking company, steamboat line, etc., the information required by subdivisions (5) and (6) of this Article need not be reported, but in lieu thereof there shall be furnished the complete routing of the shipment.

"Returns shall be filed with the Commissioner or Supervisor, as the case may be, not later than ten days after the receipt of the notice requiring the same to be made, unless the Commissioner or Supervisor shall specify a shorter period of time and designate another officer or employee to receive the same, in which event the return shall be made at the time, and filed with the officer or employee so specified.

"Article III—Records. Every person in the United States who consigns, sells, or otherwise disposes of any substance, as defined in paragraph (d) of Article I of these regulations, shall keep at his place of business such books, records, documents, papers, invoices, bills of lading, etc., relating to or connected with any such consignment, sale or other disposition, as will enable such person to make the return provided for by Article II of these regulations; Provided, That, unless the Commissioner or Supervisor shall, in writing, notify any such person so to do, he shall not be required to keep such books, records, documents, papers, invoices, bills of lading, etc., when the consignment, sale or other disposition of any such substances at the same time, does not exceed the following: (a) 300 pounds of cane, corn, or beet sugar; (b) 250 gallons of blackstrap molasses, or (c) 5 pounds of yeast when packaged or cartoned in quarter pound, half pound, pound or larger packages. When any person has made a return pursuant to the procedure provided for in Article II of these regulations, such books, records, documents, papers, invoices, bills of lading, etc., shall be kept readily available for, and open to, inspection by any officer or employee of the Alcohol Tax Unit of the Bureau of Internal Revenue during the hours of business of such person.

"Article IV—Delegation of Authority. The Deputy Commissioner in charge of the Alcohol Tax Unit, Bureau of Internal Revenue, and his assistants, Agents, Supervisors, Assistant Supervisors, Inspectors, and Investigators are, under the direction of the Commissioner, charged with the administration and enforcement of the Act and these regulations.

"These regulations shall become effective September 11, 1934."

Pursuant to the power granted under article II of the foregoing regulations, Frank L. Boyd, District Supervisor for the Districts of Kentucky and Tennessee, on January 8, 1935, caused a notice to be served on the Holy Cross Mercantile Company, Loretto, Ky., of which concern the defendant was secretary and treasurer, and in charge of its affairs, requiring it to do the following:

"The 73d Congress passed Joint Resolution No. 373 on June 18, 1934, entitled 'Joint Resolution to Protect the Revenue by Requiring Information Concerning the Disposition of Substances Used in the Manufacture of Distilled Spirits.' The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated regulations pursuant to the provisions of said Joint Resolution. Such regulations are identified as 'Regulations No. 17' and became effective September 11, 1934. A copy of the Regulations, which includes the Joint Resolution above referred to, is attached hereto.

"The regulations provide that when required in writing by the Commissioner of Internal Revenue or the District Supervisor of the Alcohol Tax Unit, every person in the United States who consigns, sells, or otherwise disposes of blackstrap molasses; corn sugar, beet sugar, and cane sugar; yeast; oak chips, charred or not charred, shall render in writing a correct return under oath showing the following:

"1. The date of the consignment, sale or other disposition of the substance.

"2. The quantity and kind of the substance consigned, sold, or otherwise disposed of.

"3. The name and complete address of the purchaser, or person to whom disposition is made, and if the sale or disposition is made by or through any other person, the name and complete address of such other person.

"4. The name and complete address of the consignee.

"5. The date and method of shipment or delivery, such as by truck, or other conveyance, and the state or city registration number of such truck, or other conveyance, if any.

"6. The name and complete address of the driver of such truck, or other conveyance.

"7. The name and complete address of the person to whom actual delivery has been, or is to be made.

"8. The exact date of such delivery, or proposed delivery. Where shipment is made by common carrier, such as a railroad, trucking company, steamboat line, etc., the information required under paragraphs 5

and 6 hereof need not be reported, but in lieu thereof, there shall be furnished the complete routing of the shipment, together with data and number of waybill, and in the case of shipment by railroad the name and number of the car in which such shipment is made.

"By virtue of the authority imposed on me as District Supervisor, I hereby make demand on you to render daily, beginning the day following your receipt of this letter, a correct return under oath, containing a list of all the substances outlined above sold or otherwise disposed of by you, together with the information requested herein regarding each of such substances sold or otherwise disposed of; provided, however, that sales or other disposition made of quantities of less than 300 pounds of cane, corn or beet sugar, 250 gallons of blackstrap molasses, or 5 pounds of yeast need not be reported on such return. The return should be transmitted daily and not later than the day following the date of the transaction reported, addressed as follows: Investigator in Charge, Alcohol Tax Unit, Room 8, Federal Building, Louisville, Kentucky. You will be furnished with a supply of appropriate forms for your use in making the above return.

"You are hereby notified to keep at your place of business, open and available for inspection by investigators or inspectors of this Unit at any time during business hours, all books, records, documents, papers, invoices, bills of lading, etc., relating to or connected with any such sale or other disposition made of the substances mentioned above.

"These instructions will supersede any and all instructions which you may have received regarding this matter in the past.

"A copy of this notice and demand should be retained by you for your record. Any inquiry regarding this demand or the procedure outlined herein should be directed to the office indicated above."

On March 12, 1935, the supervisor served a second notice on the company, which was an exact duplicate of the first, with the exception that it required the company to report daily all sales of sugar in excess of 50 pounds in lieu of 300 pounds as in the first notice, and all daily sales of yeast in excess of 1 pound, in lieu of 5 pounds as set out in the first notice. Proper forms were furnished to the company on which to make the returns.

The defendant receipted for the notices and the forms, but made no returns. The company with which the defendant was connected operated a small store in the town of Loretto, and testified that it served approximately 300 families.

During the period of time in the indictment, the company purchased more than 602,000 pounds of sugar. A great deal of it was hauled from the warehouse in the nighttime in 100-pound bags. The jury found the defendant guilty on all four counts of the indictment, and the evidence of his guilt is overwhelming if the statute, regulations, and notices served on the company support a criminal charge for their violation.

The supervisor testified that the amount of sugar which any person or corporation was permitted to sell without reporting the sale thereof was determined in the light of the particular facts and circumstances as to each individual or company; that all sales in excess of 300 pounds must be reported by every one making sales of sugar as described in the regulations, and if deemed necessary to trace sales because of circumstances indicating a diversion of sugar by a purchaser for the manufacture of taxable liquors, the seller was required to report in whatever minimum amount the supervisor deemed proper.

It is claimed by the defendant that the Joint Resolution June 18, 1934, c. 611, 48 Stat. 1020, 26 USCA § 275 (26 USCA § 1162a), delegates legislative power to the Commissioner of Internal Revenue and the Secretary of the Treasury, and that the regulations, which it is claimed the defendant violated and for which he is criminally liable, delegate the power of the Commissioner of Internal Revenue and the Secretary of the Treasury to the District Supervisor, an officer not mentioned or referred to in any of the statutes on the subject of controlling and regulating the sale of non tax-paid distilled spirits.

Taking these contentions up in the order stated, the act does not itself require a return to be made by any person concerning the matters referred to therein, unless required to do so by the Commissioner of Internal Revenue.

It is further provided that if a report is required, it shall be rendered in the form and manner as the Commissioner, with the approval of the Secretary of the Treasury, may by rules and regulations prescribe,

showing the name and address of the person to whom such disposition was made, with such details as to the quantity so disposed of, or other information which the Commissioner may require as will enable the Commissioner to determine whether all taxes due with respect to any distilled spirits manufactured from such substances have been paid. The act defines the word "person" as used therein, and further it is stated that the term "substance of the character used in the manufacture of distilled spirits" includes, but not by way of limitation, molasses, corn sugar, cane sugar, and malt sugar.

Montesquieu, in referring to the distribution of the powers of government, said: "When the Legislative and Executive powers are united in the same person, or in the same body of magistrates, there can be no liberty because apprehensions may arise least the same monarch or Senate should enact tyrannical laws, to execute them in a tyrannical manner." Montesquieu, B. 11, ch. 6.

Mr. Justice Blackstone, in his Commentaries, says: "In all tyrannical Governments the Supreme magistracy or the right both of making and enforcing laws is vested in the same man or one and the same body of men; and wherever these two powers are united together there can be no public liberty. The magistrate may enact tyrannical laws and execute them in a tyrannical manner since he is possessed, in quality of dispenser of Justice, with all the power which he as a Legislator thinks proper to give himself." 1 Blackstone, Comm. 146.

We hear a great deal said by writers, lawyers, and judges at the present time about the sacredness of states' rights, and that the federal government should be kept out of the local field of regulation of business and other interests affecting the public, and that the police power and other matters of public welfare should be left to the exclusive control of the states. These matters are of importance, but the people of this country run only slight risk of loss, damage, or harm from national regulation and control of all matters of nation-wide importance. No dictator will ever arise from the proper exercise by Congress of its powers for the public welfare. The fountain head of dictatorship is at the convergence of legislative and executive power. So long as courts and the people are vigilant to keep separate and distinct legislative, executive, and judicial power, the freedom and happiness of the citizens of this land are secure. Whenever the legislative and executive coalesce, the rights of man dwindle in exact ratio to their adhesiveness. Men of the highest purpose will be unable to measure the rules of conduct by known or fixed laws, if laws and regulations may be promulgated according to each individual case as determined by some departmental official, regardless of his purpose or motive.

It will scarcely be denied that the greatest and most important right of a citizen of the United States is that he shall be governed by no laws except those to which he either in person or by his representative in Congress has given his consent, and I will venture to assert that this is the basis of freedom in the United States. It is the very bedrock of constitutional government, and when lost, the Constitution is destroyed. No citizen of this country should be made to suffer in his body or in his goods except for a distinct breach of law established through congressional action, and no rights should be taken from him in personam without a judicial investigation by the ordinary courts of the land. Americans were for a long time after the adoption of the Constitution thoroughly accustomed to the above system of government. Certainty of laws and judicial investigation for breaches thereof were our second natures. Such principles spring from love of justice and respect for the law, which have caused natives of other countries to express a sincere tribute to our system of government. The underlying contrast, the permanent antithesis, is between the supremacy of the law on one hand, and on the other the arbitrary, which may easily prove to be the capricious, exercise of lawless power. Nothing is more repugnant to the American mind than that authority should be irresponsible and uncontrolled, or that it should operate at pleasure or in the dark, or that men should live in an atmosphere of uncertainty as to the nature of the rights they enjoy or the penalties to which they are exposed, or that among fellow citizens there should be one law for one individual and a different law for another, relating to the same subject-matter, or that one person should be subject to supervision and another, doing precisely the same thing, should not.

The act here involved, within itself, lays down no rule or standard by which those

dealing or trading in the products referred to could govern their conduct. Until rules and regulations are promulgated by the Commissioner, with the approval of the Secretary of the Treasury, no person can tell what is within or without the provisions of the act. The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Such a principle complies with the ordinary notions of fair play and settled rules of law, and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess its meaning and differ as to its application, violates the first essential of due process of law. Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 76 L. Ed. 1062, 86 A. L. R. 403; Connally v. General Construction Co., 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322; United States v. L. Cohen Grocery Co., 255 U. S. 81, 89, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045; Small Co. v. American Sugar Refining Co., 267 U. S. 233, 239, 45 S. Ct. 295, 69 L. Ed. 589; Cline v. Frink Dairy Co., 274 U. S. 443, 454, 47 S. Ct. 681, 71 L. Ed. 1146; Smith v. Cahoon, 283 U. S. 553, 564, 51 S. Ct. 582, 75 L. Ed. 1264.

The act here in question is too indefinite to constitute a law.

The method of administering this law, as disclosed in this case, is conclusive evidence of the attempted delegation of power by the Congress to the executive branch of the government. The flagrant violation of the principles of the separation of powers was never more apparent than in the case at bar.

The Commissioner of Internal Revenue first promulgated what is referred to in the record as Regulation 17. Article II of this regulation only required persons dealing in the contraband products referred to therein to make a report when required in writing by the Commissioner or Supervisor. Article III required all persons who consigned, sold, or otherwise disposed of any of the substances defined in paragraph (d) of article I of the Regulations to keep books, records, documents, papers, invoices, bills of lading, etc., relating to or connected with the consignment or sale of the product. However, those who dealt in quantities of sugar in less than 300 pounds, or 250 gallons of blackstrap molasses, or 5 pounds of yeast, were not required to keep any records.

The indictment in this case is not based on a violation of the so-called Regulation 17, but it is charged that the defendant violated an order directed to him, or to the Holy Cross Mercantile Company of which he was manager, by Frank L. Boyd, District Supervisor, on March 12, 1935. It will thus be seen that the defendant is sought to be punished by a fine of not more than $500 or imprisonment for not more than one year, or both, for refusing to comply with an order issued by an officer who was not designated as such by any statutory law of the land. The supervisor becomes such by an administrative order of the Commissioner of Internal Revenue. Such a method of forcing compliance with the order of a subordinate employee of the Executive Department of the government is abhorrent to every sense of justice. Departmental orders and regulations are to some extent unavoidable, but before a citizen becomes criminally liable for their violation, the statute on which the regulation or order is based should cover the facts which make the offense.

Under the act here in question, the Commissioner of Internal Revenue and the supervisor claim the power to treat the case of each individual citizen differently, and to have a set of rules or orders applicable to each individual case, depending on the conclusion of the supervisor that the sale of the substance sought to be regulated under the statute may be transferred by the merchant to a person who will use it for the making of intoxicating liquor without the payment of the tax. The supervisor reaches his conclusion without any opportunity for the person to be heard. "Due process of law" has been defined many times as meaning the law of the land, and the law of the land implies a general public law, equally binding upon every member of the community, which embraces all persons who are in, or who may come into, like situations and circumstances, and not partial laws affecting rights of classes of individuals; and when applied to special or class legislation, it means in addition that the classification must be natural and reasonable, not arbitrary and capricious. Purely arbitrary orders directed against individuals or classes are not the law of the land. One of the requirements of the Fifth Amendment is that no person shall be deprived of

life, liberty, or property without due process of law.

In Missouri Pacific R. Co. v. Humes, 115 U. S. 512, 519, 6 S. Ct. 110, 112, 29 L. Ed. 463, Justice Field said: "In England the requirement of due process of law, in cases where life, liberty and property were affected, was originally designed to secure the subject against the arbitrary action of the crown, and to place him under the protection of the law. The words were held to be the equivalent of 'law of the land.' And a similar purpose must be ascribed to them when applied to a legislative body in this country; that is, that they are intended, in addition to other guaranties of private rights, to give increased security against the arbitrary deprivation of life or liberty, and the arbitrary spoliation of property."

The Congress in enacting a law complete within itself in order to accomplish regulation of particular matters falling within its jurisdiction may expressly authorize administrative boards or officers, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose. However, the regulation here in question goes far beyond the principle outlined, and it and the orders issued by the supervisor are condemned under the rules laid down in numerous cases. In the case of United States v. Louisville & Nashville R. Co. (D. C.) 176 F. 942, 944, the court said: "A crime can be created only by a public act, and the language of the act must be sufficient to completely declare and define the crime and affix the punishment. It is not competent for Congress to delegate to the President or the head of an executive department the power to declare what facts shall constitute an offence. It is competent for Congress to commit to the executive the power to determine when the occasion, provided by the law itself for its going into effect, has occurred, and whether the facts, which the law makes conditions to its operation or to a partial or temporary suspension of its operation, exist, and also to provide for the details of the law's administration. It is not competent for Congress to intrust to the executive the power to declare by a departmental rule or regulation that to be unlawful, in the sense of criminal, which would otherwise be lawful; nor, itself, to declare a violation of rules or regulations, thereafter to be promulgated by the executive, a criminal offense. The crime must be created by the act of Congress, alone, for the public are not required to look beyond the act in their endeavor to ascertain what is criminal, and the discretion of fixing what facts import criminality is exclusively that of the lawmaker as distinguished from the executive. The effect of departmental regulations, not ratified by act of Congress, is confined to civil matters, and cannot be made the predicate of criminal offenses." Compare United States v. Eaton, 144 U. S. 677, 12 S. Ct. 764, 36 L. Ed. 591; Caha v. United States, 152 U. S. 211, 14 S. Ct. 513, 38 L. Ed. 415; United States v. Bailey, 9 Pet. 238, 9 L. Ed. 113; Panama Refining Co. et al. v. Ryan, 293 U. S. 388, 420, 55 S. Ct. 241, 79 L. Ed. 446; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267; In re Kollock, Petitioner, 165 U. S. 526, 17 S. Ct. 444, 41 L. Ed. 813; United States v. Shreveport Grain & Elevator Co., 287 U. S. 77, 85, 53 S. Ct. 42, 77 L. Ed. 175; St. Louis Merchants' Bridge Terminal R. Co. v. United States (C. C. A.) 188 F. 191, 195; United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712; Yu Cong Eng v. Trinidad, Collector, 271 U. S. 500, 528, 46 S. Ct. 619, 70 L. Ed. 1059; Hall v. Geiger-Jones Co., 242 U. S. 539, 559, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; Merrick v. Halsey & Co., 242 U. S. 568, 590, 37 S. Ct. 227, 61 L. Ed. 498; Schechter Poultry Corporation v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947.

The Congress may have the power, by an act, to trace the corn, rye, and barley from the grower to its ultimate use as a finished product. It may likewise trace sugar from the refinery to its ultimate consumption, for the purpose of convicting the illicit manufacturers of liquor; but it must be remembered that practically all of the products required in the manufacture of intoxicating liquor are used by millions for lawful and legitimate objects. Until there is a general law on the subject, this act, and similar ones, must fail because it can only be administered by the exercise of arbitrary power.

The motion for a new trial will be granted, the demurrer sustained, and the indictment dismissed.