## CRUICKSHANK *v.* BIDWELL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 282. Argued November 10, 13, 1899. — Decided January 15, 1900.

The mere fact that a law is unconstitutional does not entitle a party to relief by injunction against proceedings in compliance therewith, but it must appear that he has no adequate remedy by the ordinary processes of the law, or that the case falls under some recognized head of equity jurisdiction; and in this case the averments of the complainants' bill did not justify such an interference with executive action.

The seizure of importations of teas purchased after the approval of the act of March 2, 1897, c. 358, entitled "An act to prevent the importation

of impure and unwholesome tea," and the establishment of regulations and standards thereunder, publicly promulgated and known to complainants, because falling below the standards prescribed, could inflict no other injury than what it must be assumed was anticipated, and the interposition of a court of equity cannot properly be invoked, under such circumstances, to determine in advance whether complainants, if they imported teas of that character, could escape the consequences on the ground of the invalidity of the law.

THIS is an appeal from a decree of the Circuit Court of the United States for the Southern District of New York dismissing, on demurrer, a bill in equity brought by Cruickshank and others, copartners doing business in the city of New York, against George R. Bidwell, collector of customs for the port of New York

The bill averred that complainants were engaged in importing teas from Japan into the United States; that during the month of November, 1897, they imported into the United States and entered at the custom house in the port of New York, several invoices of tea of the aggregate value of something over $4100; that they applied to defendant as collector of customs for permission to take possession of the goods, and the collector refused to permit them to do so, but retained the same in his own possession, claiming that he was thereunto authorized by the provisions of an act of Congress, approved March 2, 1897, c. 328, 29 Stat. 604, entitled "An act to prevent the importation of impure and unwholesome tea." This act is printed in the margin.[1]

---

[1] That from and after May first, eighteen hundred and ninety-seven, it shall be unlawful for any person or persons or corporation to import or bring into the United States any merchandise as tea which is inferior in purity, quality and fitness for consumption to the standards provided in section three of this act, and the importation of all such merchandise is hereby prohibited.

SEC. 2. That immediately after the passage of this act, and on or before February fifteenth of each year thereafter, the Secretary of the Treasury shall appoint a board, to consist of seven members, each of whom shall be an expert in teas, and who shall prepare and submit to him standard samples of tea; that the person so appointed shall be at all times subject to removal by the said Secretary, and shall serve for the term of one year; that vacancies in the said board occurring by removal, death, resignation or any other

That defendant pretends that he is entitled " so to refuse to permit your orators to take possession of said teas and to dispose of the same, on the ground that samples of said teas, of

cause shall be forthwith filled by the Secretary of the Treasury by appointment, such appointee to hold for the unexpired term; that said board shall appoint a presiding officer, who shall be the medium of all communications to or from such board; that each member of said board shall receive as compensation the sum of fifty dollars per annum, which, together with all necessary expenses while engaged upon the duty herein provided, shall be paid out of the appropriation for " expenses of collecting the revenue from customs."

SEC. 3. That the Secretary of the Treasury, upon the recommendation of the said board, shall fix and establish uniform standards of purity, quality and fitness for consumption of all kinds of teas imported into the United States, and shall procure and deposit in the custom houses of the ports of New York, Chicago, San Francisco and such other ports as he may determine, duplicate samples of such standards; that said Secretary shall procure a sufficient number of other duplicate samples of such standards to supply the importers and dealers in tea at all ports during the same at cost. All teas, or merchandise described as tea, of inferior purity, quality and fitness for consumption to such standards shall be deemed within the prohibition of the first section hereof.

SEC. 4. That on making entry at the custom house of all teas, or merchandise described as tea, imported into the United States, the importer or consignee shall give a bond to the collector of the port that such merchandise shall not be removed from the warehouse until released by the collector, after it shall have been duly examined with reference to its purity, quality and fitness for consumption; that for the purpose of such examination samples of each line in every invoice of tea shall be submitted by the importer or consignee to the examiner, together with the sworn statement of such importer or consignee that such samples represent the true quality of each and every part of the invoice and accord with the specifications therein contained; or in the discretion of the Secretary of the Treasury, such samples shall be obtained by the examiner and compared by him with the standards established by this act; and in cases where said tea, or merchandise described as tea, is entered at ports where there is no qualified examiner as provided in section seven, the consignee or importer shall in the manner aforesaid furnish under oath a sample of each line of tea to the collector or other revenue officer to whom is committed the collection of duties, and said officer shall also draw or cause to be drawn samples of each line in every invoice and shall forward the same to a duly qualified examiner as provided in section seven: *Provided, however*, That the bond above required shall also be conditioned for the payment of all custom-house charges which may attach to such merchandise prior to its being released or destroyed (as the case may be) under the provisions of this act.

each of said several invoices hereinafter set forth, have been taken by examiners appointed under the alleged authority of the said act of Congress, and compared with certain other samples of other teas selected by the Secretary of the Treas-

SEC. 5. That if, after an examination as provided in section four, the tea is found by the examiner to be equal in purity, quality and fitness for consumption to the standards hereinbefore provided, and no reëxamination shall be demanded by the collector as provided in section six, a permit shall at once be granted to the importer or consignee declaring the tea free from the control of the customs authorities; but if on examination such tea, or merchandise described as tea, is found, in the opinion of the examiner, to be inferior in purity, quality and fitness for consumption to the said standards the importer or consignee shall be immediately notified, and the tea, or merchandise described as tea, shall not be released by the custom house, unless on a reëxamination called for by the importer or consignee the finding of the examiner shall be found to be erroneous: *Provided,* That should a portion of the invoice be passed by the examiner, a permit shall be granted for that portion and the remainder held for further examination, as provided in section six.

SEC. 6. That in case the collector, importer or consignee shall protest against the finding of the examiner, the matter in dispute shall be referred for decision to a board of three United States general appraisers, to be designated by the Secretary of the Treasury, and if such board shall, after due examination, find the tea in question to be equal in purity, quality and fitness for consumption to the proper standards, a permit shall be issued by the collector for its release and delivery to the importer; but if upon such final reëxamination by such board the tea shall be found to be inferior in purity, quality and fitness for consumption to the said standards, the importer or consignee shall give a bond, with security satisfactory to the collector, to export said tea, or merchandise described as tea, out of the limits of the United States within a period of six months after such final reëxamination; and if the same shall not have been exported within the time specified, the collector, at the expiration of that time, shall cause the same to be destroyed.

SEC. 7. That the examination herein provided for shall be made by a duly qualified examiner at a port where standard samples are established, and where the merchandise is entered at ports where there is no qualified examiner, the examination shall be made at that one of said ports which is nearest the port of entry, and that for this purpose samples of the merchandise, obtained in the manner prescribed by section four of this act, shall be forwarded to the proper port by the collector or chief officer at the port of entry; that in all cases of examination or reëxamination of teas, or merchandise described as tea, by examiners or boards of United States general appraisers under the provisions of this act, the purity, quality and fitness for consumption of the same shall be tested according to the usages and cus-

ury of the United States, and set up as standard samples of teas under the alleged authority of the said act of Congress, and that the samples so taken from the said teas hereinafter set forth, were inferior in some or all of the respects designated in said act of Congress, either as to purity, quality or fitness for consumption, to the standards so prescribed by said Secretary of the Treasury of the United States."

That defendant claims the right to retain the teas for six months, and then cause them to be destroyed, and demands that complainants shall give security satisfactory to him that

toms of the tea trade, including the testing of an infusion of the same in boiling water, and, if necessary, chemical analysis.

SEC. 8. That in cases of reëxamination of teas, or merchandise described as teas, by a board of United States general appraisers in pursuance of the provisions hereof, samples of the tea, or merchandise described as tea, in dispute, for transmission to such board for its decision, shall be put up and sealed by the examiner in the presence of the importer or consignee if he so desires, and transmitted to such board, together with a copy of the finding of the examiner, setting forth the cause of condemnation and the claim or ground of the protest of the importer relating to the same, such samples, and the papers therewith, to be distinguished by such mark that the same may be identified; that the decision of such board shall be in writing, signed by them, and transmitted, together with the record and samples, within three days after the rendition thereof, to the collector, who shall forthwith furnish the examiner and the importer or consignee with a copy of said decision or finding. The board of United States general appraisers herein provided for shall be authorized to obtain the advice, when necessary, of persons skilled in the examination of teas, who shall each receive for his services in any particular case a compensation not exceeding five dollars.

SEC. 9. That no imported teas which have been rejected by a customs examiner or by a board of United States general appraisers, and exported under the provisions of this act, shall be reimported into the United States under the penalty of forfeiture for a violation of this prohibition.

SEC. 10. That the Secretary of the Treasury shall have the power to enforce the provisions of this act by appropriate regulations.

SEC. 11. That teas actually on shipboard for shipment to the United States at the time of the passage of this act shall not be subject to the prohibition hereof, but the provisions of the act entitled " An act to prevent the importation of adulterated and spurious teas," approved March second, eighteen hundred and eighty-three, shall be applicable thereto.

SEC. 12. That the act entitled " An act to prevent the importation of adulterated and spurious teas," approved March second, eighteen hundred and eighty-three, is hereby repealed, such repeal to take effect on the date on which this act goes into effect. 29 Stat. 604, c. 358.

if said teas shall be released to them, they will forthwith
export said teas out of the limits of the United States, and
will submit the invoices and various papers relating to said
teas to be marked by defendant as teas "condemned under
the laws of the United States."

The bill then specifically enumerated the entries of the teas,
the warehouses in which they were, and their value respec-
tively, and charged that said act of Congress was in all respects
null and void and of no effect, because contrary to the provi-
sions of the Constitution of the United States, in that the act
"purports to delegate to the Secretary of the Treasury power
and authority to legislate as to the quality, purity and fitness
for consumption of the teas imported by your orators, and to
authorize the defendant to seize, hold and destroy said teas,
and deprive your orators of their property in the same with-
out due process of law, and that in this suit the matter in dis-
pute, to wit, the value of the said teas, and the right to import
teas, exclusive of interest and costs, exceeds the sum or value
of two thousand dollars, and the suit arises under the Consti-
tution and laws of the United States."

It was further alleged that by reason of the matters set
forth and the insistence of defendant that he is entitled to
hold possession and control of the goods under authority of
the act of Congress, "for the reason that the said examiners,
after examination made pursuant to said statute, have declared
the said teas to be inferior in the respects set forth in the said
act of Congress, or some of them, to the standards fixed and
selected by the Secretary of the Treasury; your orators will
suffer irreparable damage; that the insistence of the defend-
ant of his right to stamp the invoices and papers relating to
the importation of said teas as condemned under the laws of
the United States, renders the said teas worthless for export,
and entry or sale in the markets of other countries, and that
the said claim of the defendant that the said teas cannot be
lawfully taken from the said warehouses, renders the said
teas unsalable and worthless in the market, for the reason
that dealers will not purchase or handle the said goods
under the cloud or threat of illegality regarding the same

created by such insistence and claim on the part of the defend-
ant."

The bill continued : " Your orators further show that your
orators purpose and intend to import from time to time other
invoices of teas into the United States, and that the said
defendant threatens and intends to seize and hold such teas,
and take possession and control of the same, and refuse your
orators possession of the same, in the same manner and under
the same claim of authority of said act of Congress, as the
said defendant has heretofore made and set up with regard to
the teas hereinbefore set forth, and that your orators' right
to import and deal in teas is thereby destroyed and taken
away."

That complainants " do not set up or allege as ground for
denying the right of the defendant so to hold and deal with
said teas, as hereinbefore set forth, any defect, omission
or irregularity in the proceedings by the examiners and
appraisers with regard to said teas, but solely on the ground
that the act of Congress hereinbefore referred to . . . is
unconstitutional and void, and confers no authority upon the
defendant, and creates no right in the defendant to refuse to
permit your orators to take possession of the said teas and
introduce them into, and sell them in, the United States."
And further, that complainants had complied in all respects
with the requirements of law as to the entry of the teas in
the custom house at the port of New York; that there was
no further act required by law of complainants to entitle them
to take possession and dispose of the same; and that com-
plainants " are without any adequate remedy at law."

The bill prayed for injunction restraining defendant " from
continuing to hold possession of the said teas, as hereinbefore
set forth, and from refusing to permit your orators to take
possession of the same and withdraw the same from the said
warehouses, and from marking or stamping the invoices and
papers relating to the importation thereof with the words,
'condemned under the laws of the United States,' or any
words to that effect, and from destroying the said teas, and
from exercising any alleged right, possession or authority

relating to or concerning the said teas, purporting to be conferred or created or authorized by the said act of Congress;". and for general relief.

*Mr. John S. Davenport* for appellants.

*Mr. Edward B. Whitney* for appellee. *Mr. Solicitor General* was on his brief.

*Mr. James L. Bishop* by leave of court filed a brief on behalf of William J. Butterfield and others.

Mr. Chief Justice Fuller delivered the opinion of the court.

Complainants sought by this bill to enjoin an officer of the United States from the discharge of duties expressly imposed upon him by an act of Congress on the ground of its unconstitutionality. We are clear that its averments did not justify such an interference with executive action.

In *Noble* v. *Union River Logging Railroad Company*, 147 U. S. 165, the jurisdiction was sustained, but the Government raised no point as to the form of the remedy, and deprivation of a vested legal right of property, acquired before any suggestion that it could be taken away, was there threatened. And it appeared that the only remedy was through equity interposition. *New Orleans* v. *Paine*, 147 U. S. 261, 264. But we are unwilling to extend that precedent.

It is settled that the mere fact that a law is unconstitutional does not entitle a party to relief by injunction against proceedings in compliance therewith, but it must appear that he has no adequate remedy by the ordinary processes of the law or that the case falls under some recognized head of equity jurisdiction. *Shelton* v. *Platt*, 139 U. S. 591; *Allen* v. *Pullman's Palace Car Company*, 139 U. S. 658; *Pacific Express Company* v. *Seibert*, 142 U. S. 339; *Pittsburg &c. Railway Company* v. *Board of Public Works*, 172 U. S. 32; *Arkansas Building & Loan Association* v. *Madden*, 175 U. S. 269. As

remarked by Mr. Justice Bradley in *New York Guaranty Co.* v. *Memphis Water Co.*, 107 U. S. 205, 214, the sixteenth section of the Judiciary Act of 1789, now section 723 of the Revised Statutes, declaring " that suits in equity shall not be sustained in either of the courts of the United States in any case where plain, adequate and complete remedy may be had at law " "certainly means something; and if only declaratory of what was always the law, it must at least have been intended to emphasize the rule, and to impress it upon the attention of the courts."

Inadequacy of remedy at law exists where the case made demands preventive relief, as, for instance, the prevention of multiplicity of suits, or the prevention of irreparable injury. The one head is well illustrated by *Union Pacific Railway Company* v. *Cheyenne*, 113 U. S. 516, and *Smyth* v. *Ames*, 169 U. S. 466, 517; and the other by *Watson* v. *Sutherland*, 5 Wall. 74; cited by counsel.

But this bill does not aver, nor does it appear, that there would be any multiplicity of suits if complainants were left to their remedy at law.

The sole ground of equity jurisdiction put forward is the inadequacy of remedy at law in that the injury threatened is not susceptible of complete compensation in damages. The mere assertion that the apprehended acts will inflict irreparable injury is not enough. Facts must be alleged from which the court can reasonably infer that such would be the result, and in this particular we think the bill fatally defective.

The matter in dispute was averred to be "the value of the said teas and the right to import teas."

Confessedly the value of these teas was known, and their destruction capable of being compensated by recovery at law. The official character of the collector, the provisions of the act, and the regulations of the Secretary of the Treasury in execution thereof would not constitute a defence, if the act were unconstitutional. There was no intimation that the collector would be unable to respond in judgment, and, moreover, section 989 of the Revised Statutes provides that when a recovery is had in any suit or proceeding against a collector

for any act done by him, probable cause being certified, "the amount recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the Treasury." *The Conqueror*, 166 U. S. 110, 124.

Nor was there any averment of injury by reason of the condemnation of these teas other than the loss of the teas themselves.

The allegations in respect of apprehended deprivation of the right to import and deal in teas were that complainants intended to import from time to time other invoices of teas and that the collector threatened to take possession of and hold them in the exercise of authority under the act of Congress in the same manner as the particular teas in question. This was in effect to assert a vested right to import and deal in teas which might be impure and unwholesome, and which were at all events, inferior to the uniform standards "of purity, quality and fitness for consumption" fixed by the Secretary. The law does not prohibit the importation of teas coming up to the standards, and it is difficult to perceive the elements of irreparable injury in the denial of permission to import inferior teas.

Manifestly the seizure of importations of teas purchased after the approval of the act and the establishment of regulations and standards thereunder, publicly promulgated and known to complainants, because falling below the standards prescribed, could inflict no other injury than what it must be assumed was anticipated, and the interposition of a court of equity cannot properly be invoked, under such circumstances, to determine in advance whether complainants, if they imported teas of that character, could escape the consequences on the ground of the invalidity of the law.

As no tenable basis for equity interposition was shown, the decree of the Circuit Court dismissing the bill was rightly entered.                                *Decree affirmed.*