**PATTON v. ADMINISTRATOR OF
CIVIL AERONAUTICS et al.**

No. 7252.

District Court, Alaska
Fourth Division, Fairbanks.
June 17, 1953.

Maurice T. Johnson, Fairbanks, Alaska, for plaintiff.

Robert J. McNealy, U. S. Atty., Fairbanks, Alaska, for defendants.

PRATT, District Judge.

(a)(1) This is an action of a civil nature, brought to enjoin the enforcement of a regulation issued by the Administrator of Civil Aeronautics and filed December 11, 1951, which regulations are contained in Title 14, Civil Aviation, Chapter II, Civil Aeronautics Administration, Department of Commerce, Part 580, Anchorage Airport and Fairbanks Airport, and which regulation was published in the Federal Register December 12, 1951, Volume 16, No. 240, on page 12497.

This action arises under, and involves the interpretation of, Section 580.13 of said regulation, which regulation was issued on the basis of Sections 4 and 8 of the Alaska Airports Act, 62 Statutes 278, 48 U.S.C.A. § 485 et seq., and the said Section 580.13

dealing with taxicabs is in words and figures as follows:

"Sec. 580.13 *Taxicabs*. (a) Except as otherwise expressly permitted by the Administrator, no person shall operate any taxicab or other vehicle carrying passengers for hire from the airport unless he is the holder of an appropriate permit issued by the Airport Manager.

"(b) Except as otherwise permitted by the Airport Manager, no person shall park on the airport any taxicab or other vehicle used for the purpose of carrying passengers for hire, except for the purpose of discharging passengers, unless he is the holder of an appropriate permit issued by the Airport Manager.

"(c) No person shall, within the boundary of the airport, solicit or invite persons to ride in any taxicab or other vehicle used for the purpose of carrying passengers for hire, by driving slowly past loading entrances to airport buildings, by committing other acts, or by uttering words which are calculated to induce persons to engage such taxicab or other vehicle, unless such activity is carried on with the express approval of the Airport Manager and under such terms and conditions as he may prescribe.

"(d) Any person desiring the approval of the Airport Manager to operate on the airport a taxicab or other vehicle used for the purpose of carrying passengers for hire, shall file a written application with the Airport Manager for a permit. Such Application shall contain the following information:

"(1) Applicant's name and address;

"(2) Make, model and license number of the vehicle the applicant desires to operate on the airport;

"(3) Description of all permits and licenses applicant holds governing the operation of the vehicle, with the serial or other identification numbers of such permits;

"(4) A list of all the public liability insurance policies carried by the applicant, with their serial or other identification numbers of the policies, the names of the insurance companies who issued them, and their expiration dates.

"Upon receipt of such an application, the Airport Manager may issue a permit authorizing the holder thereof to operate a taxicab or other passenger-carrying vehicle for hire on the airport. Such permits shall be revocable at any time in the sole discretion of the Airport Manager."

The plaintiff is engaged in the operation of a bus service for the benefit of tourists who come to Alaska, and who arrive at the Fairbanks International Airport with bus transportation paid for at various places in the United States where the tourists buy their original tickets. The transportation on the plaintiff's busses and limousines is sold weeks and months ahead of time and is contracted for at many points throughout the United States wherever tourist tickets are sold. These tours include Arctic Coast Tour, of Wien Alaska Airlines, Arctic Alaska Tours, Yukon Valley Tours of Wien Alaska Airlines, and the like. Consequently the services of the plaintiff as operator of bus transportation and limousine service to and from the Fairbanks International Airport is all contracted for ahead of time and constitutes part of a general tourist service.

On or about the 5th day of August, 1952, the plaintiff received from U. M. Culver as Director of the Alaska Air Terminals Division, one of the defendants herein, a letter which is in words and figures as follows:

"Department of Commerce
"Civil Aeronautics
  Administration
"P. O. Box 440
"Anchorage, Alaska
"August 5, 1952
"Mr. E. Patton
"c/o Arctic Alaska Travel Service
"Fairbanks, Alaska
"Dear Mr. Patton:

"We are quite concerned with the operations of your company that are in

violation of existing rules and regulations for the operation of the Fairbanks International Airport.

"The violations are in regard to the picking up of tourists traveling by airplane and arriving at the Fairbanks International Airport. Sometime ago I personally talked with Mr. Coble, who, I understand, at one time either owned a company or was a partner in a company that originally sponsored the business of providing transportation of tourists in Fairbanks who were traveling on a conducted tour program or a group plan. At sometime, no doubt, this company or your company must have advised Travel Agencies selling transportation tickets for such tours of the transportation costs at Fairbanks. Such costs were probably based on Weeks Field operation, but now that that field has been closed and air traffic arrives at the Fairbanks International Airport, a different situation exists. The Government has entered into a contract with the Yellow Cab Company of Fairbanks to provide adequate taxicab, limousine, and bus transportation from the Fairbanks International Airport and which contract provides Yellow Cab Company of Fairbanks with the exclusive right to pick up at this airport all passengers 'for hire' transportation.

"Our Airport Manager, Mr. Frank Gray, has advised you that it would be necessary for your company to make arrangements with Yellow Cab Company for your pick up of tour passengers in order to avoid violation of existing rules and regulations regarding for hire transportation from the airport. However, I understand that you have not done so and still pick up such passengers at the airport terminal building.

"We feel that your company has had ample time to advise Travel Agencies with whom you deal, that a transportation concessionaire exists at Fairbanks International Airport as well as the advertized rates which would enable tickets to be sold including such costs.

If you have already done this, then we do not understand why you have not contacted the Yellow Cab Company of Fairbanks to either arrange for this company to transport these passengers to downtown Fairbanks or make proper arrangements with the Yellow Cab Company to pick up these passengers directly, permitting the Yellow Cab Company to report the number of these travelers and to pay to the Government the contract percentage for such transportation.

"We would like to know just what steps your company has taken in regard to this matter and how soon will such tour tickets sold by companies working with your company include cost of our transportation concessionaire's services. Violations by your company will be held in suspense pending your reply to this letter.

"Sincerely yours,
"/s/ U. M. Culver
"U. M. Culver
"Director, Alaska Air Terminals Division"

Upon receipt of the foregoing letter, the plaintiff made application to Mr. Frank Gray as Manager of the Fairbanks International Airport, a defendant above named, for a permit to operate on the Fairbanks International Airport in accordance with the provisions of said Section 580.13 of the regulation quoted above. This application is in words and figures as follows:

"Application for Permit to Operate on Fairbanks International Airport

"To: Mr. Frank Gray, Manager
"Fairbanks International Airport
"Fairbanks, Alaska

"Application is hereby made to operate on the Fairbanks International Airport for the purpose of Carrying Passengers For Hire by the undersigned on the following described vehicles:

"(a) One 1949 Model Eight (8) passenger Chrysler Windsor Sedan

Serial No. 70787416

Motor No. C–38218599

Alaska license—1952 For Hire 0194

City license—1952 627 Insurance: Maryland Casualty Insurance, Policy No. 311656, 5–20–5, Public Liability and Property Damage

"(b) One 1946 Beck Mainliner Thirty-three (33) passenger bus

Alaska title No. D–12100

Serial No. 8632

Motor No. Red–450–10175

Alaska License—1952 For Hire 59077

City License—1952 628 Insurance: Maryland Casualty Company Insurance Policy No. 311657, 5–20–5, Public Liability and Property Damage

"Dated at Fairbanks, Alaska, this 16th day of August, 1952.

"E. W. Patton Company

"/s/ Everett W. Patton

"Owner-Applicant"

Subsequently, on or about the 21st day of August, 1952, the plaintiff received from Frank Gray, as Airport Manager of the Fairbanks International Airport, one of the defendants above named, a letter stating that the plaintiff's application had been denied for the reason that the Yellow Cab Company had been given an exclusive permit to operate on the Fairbanks International Airport; this letter is in words and figures as follows:

"Department of Commerce

"Civil Aeronautics Administration

"P. O. Box 1270

"Fairbanks, Alaska

"August 21, 1952

"Mr. Everett W. Patton

"P. O. Box 783

"Fairbanks, Alaska

"Dear Sir:

"This will acknowledge your application for permit to operate for hire passenger carrying vehicles on the Fairbanks International Airport dated August 16, 1952.

"Inasmuch as the Government has entered into an operating agreement with the Yellow Cab Company for such services, and since these services are satisfactory to the Government and meet the demand for such service, I regret that I am unable to issue the requested permit.

"This however does not deny the right to discharge passengers at designated areas on the Airport Reserve as set forth in the Code of Federal Regulations, Title 14, Civil Aviation, Part 580.13(b), but does deny the right to pick up for hire passengers from any area on the Airport Reserve.

"Sincerely yours,

"/s/ Frank Gray

"Frank Gray, Airport Manager

"Fairbanks International

Airport"

(a) (2) The pertinent statutes and regulations are:

U. S. Constitution, Article IV, Sec. 3:

"The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *."

Act approved May 28, 1948, 62 Stat. 277–8, 48 U.S.C.A. § 485 et seq.:

"An Act to authorize the construction, protection, operation, and maintenance of public airports in the Territory of Alaska.

"* * * the Administrator of Civil Aeronautics (hereinafter referred to as the 'Administrator') is hereby authorized and directed to construct, protect, operate, improve, and maintain within the Territory of Alaska a public airport at or near Anchorage and a public airport at or near Fairbanks (including all buildings and other structures necessary or desirable therefor) adequate for the needs of the air-transportation services and air commerce of the United States serving the Territory of Alaska and foreign coun-

tries by way of points within the Territory of Alaska.

\* \* \* \* \* \*

"Sec. 4. The Administrator shall have control over and responsibility for the care, operation, maintenance, improvement, and protection of the airports, together with the power to make and amend such rules and regulations as he may deem necessary to the proper exercise thereof: *Provided,* That the authority herein contained may be delegated by the Administrator to such official or officials of the Civil Aeronautics Administration within the Territory of Alaska as the Administrator may designate.

\* \* \* \* \* \*

"Sec. 6. The Administrator is authorized to contract with any person for the performance of services at or upon the airports necessary or desirable for the proper operation of the airports, including but not limited to, contracts for furnishing food and lodging, sale of aviation fuels, furnishing of aircraft repairs and other aeronautical services, and such other services as may be necessary or desirable for the traveling public. \* \* \*

\* \* \* \* \* \*

"Sec. 8. Any person who knowingly and willfully violates any rule, regulation, or order issued by the Administrator under this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $500 or to imprisonment not exceeding six months, or to both such fine and imprisonment."

Administrative Procedure Act, 5 U.S. C.A.:

"§ 1009. Judicial review of agency action.

"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.

"Rights of review

"(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof.

"Form and venue of proceedings

"(b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law."

■ (b) Plaintiff maintains that the quoted Regulation 580.13 creates a monopoly on behalf of the Yellow Cab Company and that such monopoly is in violation of the provisions of Section 453, T.49 U.S. C.A.

True, the last sentence of Section 453, T.49 U.S.C.A. states: "There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended." However, said Section 453, T.49, is a part of the Act of June 23, 1938, creating the Civil Aeronautics Board and Administrator of Civil Aeronautics. The Act of May 28, 1948, 62 Stat. 277, 48 U.S.C.A. § 485 et seq., does not make said Section 453, T.49, or any part of it except as to definitions of words, a part of the Act of May 28, 1948. Nor does it contain any statement forbidding the Administrator from granting an exclusive right to transfer by taxicab anyone from the International Airport at Fairbanks to points outside thereof.

Section 453, T.49, affects the use of landing areas and navigation facilities exclusively and does not have anything to do with contracts with taxicabs to transport people from the airport to points outside. The International Airport Law exhibits no

prohibition upon the Administrator with reference to granting taxicab franchises, and it also fails to grant any exclusive rights relative to the use of landing areas or air navigation facilities.

It appears, therefore, that there is no law similar to the last sentence of T.49, § 453 pertaining to the granting or refusing of exclusive rights on the part of taxicab owners to transport passengers from the airport, at Fairbanks.

■ (c) The plaintiff asserts that the failure of the airport manager to grant him a permit to operate from said International Airport constitutes a violation of his Constitutional rights as guaranteed under the 14th Amendment to the Constitution of the United States.

Section 1 of the 14th Amendment to the Constitution of the United States is as follows:

"*Citizenship and Rights Thereof.* All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In 36 A.J. page 521, sec. 39 the general rule is stated:

"The Constitution of the United States does not prohibit monopolies in terms; and it is well settled that the legislature of a state, unless interdicted by a provision in the state Constitution, may, in the legitimate exercise of its police power, grant a monopoly in the carrying on of a trade or occupation, without violating the provisions of either the Thirteenth or the Fourteenth Amendment to the Federal Constitution. Therefore, the inquiry as to the status of a monopoly which has been granted by legislative action is concerned with whether any express or implied prohibition has been placed on such grant by the sovereign or superior power in the state."

In Robbins v. United States, 10 Cir., 284 F. 39, 42, where the Government sought an injunction to bar the defendant from carrying passengers for hire in a national park without written permit from the Director, the court said:

"The defendant further alleges that the regulations, if applicable to him, are unreasonable and void, and are an unconstitutional interference with his right as a member of the public to travel on the public roads, violative of the Fifth Amendment, would deprive him of his liberty and property without due process or compensation, * *.

* * * * * *

"Counsel for defendant stated to the court that the contract between the Interior Department and said transportation company was in effect exclusive and monopolistic, and gave that company the sole right to operate automobiles in transporting passengers and freight for hire. The trial judge held that the fact, if shown, did not affect any right of the defendant and would be immaterial.

* * * * * *

"But we are of the opinion that the power of the government to regulate the traffic on those highways, as it has done by congressional enactment and rules thereby authorized, rests on the secure footing that it is a valid exercise of control over the property of the government, even though it is of the nature of police power, and that it is sustained by section 3, art. 4, of the federal Constitution, which entitles the government to make all needful regulations respecting its territory and property.

* * * * * *

"Another contention of appellant is that the regulations are unreasonable and void, chiefly because they have been and will only be utilized to confer a monopolistic permit on a certain company. * * * Certainly the du-

ty was imposed upon the Secretary to regulate the traffic on the highway in a manner that would best promote the safety and accommodation of the public, and it was competent, if deemed necessary or prudent, to limit the franchise to one approved carrier. This might be called for by the conditions obtaining at the park. Before a regulation can be regarded as invalid, it must appear that the Secretary has exceeded his authority. But not so of such as are thought merely to be illiberal or not conducive to the best results. Utah Power & Light Co. v. U. S. [243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791]. By this test, we hold the regulations complained of to be reasonable and valid."

It will thus be seen that the 14th Amendment constitutes a limitation upon the States alone, so that in this case it has no application.

(d) Defendants have interposed a motion as to plaintiff's complaint alleging:

(1) That this court lacks jurisdiction over the subject matter of said action.

(2) That the complaint fails to state a claim upon which relief may be granted.

[3] Section 1009 of the Administrative Procedure Act, 5 U.S.C.A., is set forth hereinbefore 112 F.Supp. 821. Therein it is specifically provided that judicial review of agency action will not be had where agency action is by law committed to agency discretion.

It is believed that Sections 4 and 6 of the Act of May 28, 1948, supra, give the Administrator discretion as to what action he will take in regard to agency action.

In Miami Beach Airline Service v. Crandon, 159 Fla. 504, 32 So.2d 153–155, 172 A.L.R. 1425, the court in approving an exclusive franchise granted by the Dade County Port Authority said:

"In the case at bar we are confronted with a function vested in the Dade County Port Authority that is essentially proprietary and in no respect governmental. This court knows that the International Miami Airport is one of the largest airports in the world and that passengers in large numbers enter it daily from the four corners of the earth. It also knows that airports generally, because of their modernity, the area required to install them and other reasons, are remote from the City, that transporting passengers from them to the city and looking after their comfort, safety and convenience before they are delivered to final destination is the responsibility of the Dade County Port Authority. These and other services must be provided twenty-four hours in the day and it would be hazardous to hold that the Dade County Port Authority did not have the power to make contracts to insure the performance of these services.

\* \* \* \* \* \*

"When a governmental entity is authorized to exercise a power purely proprietary, the law leans to the theory that it has full power to perform it in the same efficient manner as a private person would do. The terms of the conferring act here are unambiguous. In vesting such a power in the Dade County Port Authority the legislature certainly had its importance in mind and cast the act to accomplish that purpose. The operation of the Miami International Airport has been a private enterprise and the legislature knew this. We will not presume that it provided for the performance of such an important project and then clothed the Port Authority with less power than was necessary to perform it."

To the same effect are the cases of Ex parte Houston, Okl.Cr.App., 224 P.2d 281–292; Coleman v. City of Oakland, 110 Cal. App. 715, 295 P. 59.

As to the scope of judicial review mentioned in Section 1009, T.5 U.S.C.A., Congress said:

"Matters of discretion are necessarily exempted from the section, since otherwise courts would in effect supersede agency functioning. But that does not mean that questions of law properly presented are withdrawn from reviewing courts. Where laws are so broadly drawn that agencies have large

discretion, the situation cannot be remedied by an administrative procedure act but must be treated by the revision of statutes conferring administrative powers. However, where statutory standards, definitions, or other grants of power deny or require action in given situations or confine an agency within limits as required by the Constitution, then the determination of the facts does not lie in agency discretion but must be supported by either the administrative or judicial record. In any case, the existence of discretion does not prevent a person from bringing a review action but merely prevents him pro tanto from prevailing therein." Report of the Committee on the Judiciary, House of Representatives, Administrative Procedure Act, Legislative History, Senate Document No. 248, 79th Congress, 2nd Session, Page 275.

To the same effect are the following cases: O'Brien v. Carney, D.C., 6 F.Supp. 761; Adams v. Nagle, 303 U.S. 532, 58 S. Ct. 687, 82 L.Ed. 999; City of Oakland v. United States, 9 Cir., 124 F.2d 959; Atlantic Coast Line R. Co. v. Town of Sebring, 5 Cir., 12 F.2d 679; United States v. Cottman Co., 4 Cir., 190 F.2d 805; Lansden v. Hart, 7 Cir., 180 F.2d 679, 683.

In Snyder v. Buck, D.C., 75 F.Supp. 902, 906, the court held:

"Judicial review of administrative action is governed by Section 10 of the Act. Two classes of actions are excepted from the right of judicial review: first, those as to which statutes preclude judicial review; and, second, those as to which agency action is by law committed to agency discretion.

\* \* \* \* \* \*

"The second exception comprizes agency action which is by law committed to agency discretion. Among many illustrations of such actions are the making of contracts, the making of loans by lending agencies of the Government, the issuance of passports and visas by the Department of State, the issuance of visitors' permits by the Immigration and Naturalization Service, and countless other matters in which the agency is permitted by law to reach a conclusion on the basis of its own judgment and discretion. \* \* \*"

There can be no question as to the right of Congress to make rules and regulations governing the property of the United States. Article IV, Section 3 of the Constitution. Neither is there any question as to the right of Congress to delegate this power. As was said by the court in Van Lear v. Eisele, C.C., 126 F. 823–826:

"That Congress can delegate the power to make rules and regulations concerning the public domain, or other matters, is now no longer an open question. The earliest decision on that point is United States v. Bailey, 9 Pet. 238, 9 L.Ed. 113, where it was held that the regulation of the Secretary of the Treasury, under authority of an act of Congress, permitting proofs of claims against the government to be verified before any justice of the peace of any of the states, was a valid delegation of authority, and a person guilty of swearing falsely to such a claim before a justice of the peace of the state of Kentucky was held to be properly convicted of perjury in a court of the United States. This decision has been approved and followed by that court in United States v. Eaton, 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591; Caha v. United States, 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415; In re Kollock, 165 U.S. 526, 17 S.Ct. 444, 41 L. Ed. 813. In the Caha Case there was a conviction of perjury, under section 5392, Rev.St. (U.S.Comp.St.1901, p. 3653), in a contest in a local land office; the oath having been administered by one of the land officers before whom the contest had been carried on. The judgment of the court was attacked because there was no act of Congress providing for such a contest before those officers; but the court held, in view of the general grant of authority to the Secretary of the Interior to prescribe appropriate regulations for the disposition of the public lands, that a regulation made by that department,

authorizing such contest before these local officers, made it a case in which the laws of the United States authorized an oath to be administered, and the conviction was sustained. In the Kollock Case the act of Congress authorized the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to prescribe rules and regulations for the packing of oleomargarine; and to sell or offer for sale that article packed in a manner different from that prescribed by the Commissioner of Internal Revenue was made a criminal offense. A conviction for a violation of the regulations thus made by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury was affirmed."

■■ (e) A party cannot use an order of court to compel the issuance of a permit.

In United States ex rel. Jordan v. Ickes, 79 U.S.App.D.C. 114, 143 F.2d 152, it was held:

"Appellant sought, unsuccessfully, to secure from the Secretary of the Interior prospecting leases for oil and gas upon submerged lands adjacent to the City of Long Beach, off the west coast of California. He then sued the Secretary in the District Court, seeking a declaratory judgment, a writ directing the Secretary to show cause, and an order directing him to execute and deliver leases for the lands described in his applications. Appellee's motion for a summary judgment was sustained."

And in United States ex rel. Jordan v. Ickes, Secretary of the Interior, 143 F.2d 152, 153, the Court held:

" * * * No useful purpose would be served by elaborating, again, the frequently stated rule that the discretion of an executive officer cannot be controlled by judicial coercion".

Airport authorities operate airports in their proprietary or private capacity. Mayor and Council of City of Baltimore v. Crown Cork & Seal Co., 4 Cir., 122 F.2d

385; Coleman v. City of Oakland, 110 Cal. App. 715, 295 P. 59; Mollencop v. Salem, 139 Or. 137, 8 P.2d 783, 83 A.L.R. 315.

Such being the case, it must follow that the Civil Aeronautics Administration holds the Fairbanks International Airport in its proprietary capacity.

■ (f) Plaintiff claims that he will suffer irreparable damage unless defendants are enjoined. It is firmly established that the mere allegation of "irreparable damage," without factual support, is insufficient to sustain a complaint for injunction. Cruickshank v. Bidwell, 176 U.S. 73, 20 S.Ct. 280, 44 L.Ed. 377; Universal Rim Co. v. General Motors Corp., 6 Cir., 31 F.2d 969; Milliken v. Stone, 2 Cir., 16 F.2d 981. Thus in the Cruickshank case, supra, the Supreme Court stated the rule to be, 176 U.S. at page 81, 20 S.Ct. at page 284:

"The mere assertion that the apprehended acts will inflict irreparable injury is not enough. Facts must be alleged from which the court can reasonably infer that such would be the result, and in this particular we think the bill fatally defective."

(g) From the above, it is apparent that this Court lacks jurisdiction over the subject matter of the action and that the complaint fails to state a claim upon which relief may be granted. The motion should be granted.